HORACIO A. CABRERA, demandante y apelante, *v.* NARCISO DOVAL y BASILIO DÁVILA, BANCO DE SANGRE METROPOLITANO, demandados y apelados.

Número 11195.

*Sometido:* 3 de mayo de 1954. *Resuelto:* 29 de junio de 1954.

*Ramón H. Vargas,* abogado del apelante; *Celestino Iriarte* y *F. Fernández Cuyar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

En mayo 15 de 1953 Horacio A. Cabrera acudió al Banco de Sangre Metropolitano para que se le extrajeran 500cc de sangre con el fin de donarla a su esposa. Luego de practicársele determinados exámenes se le extrajo la cantidad de sangre indicada. Al levantarse de la cama sufrió un desvanecimiento como resultado de la debilidad que le produjo la sangre donada y cayó al suelo, sufriendo lesiones en su cara. Meses después interpuso demanda ante el Tribunal Superior, Sala de San Juan, reclamando daños y perjuicios a los dueños del Banco de Sangre por las lesiones así sufridas. En dicha demanda imputó negligencia a los demandados, consistente ésta en que (1) no tomaron las medidas necesarias para impedir la caída del demandante; (2) haber indicado negligentemente al demandante que éste se encontraba en condiciones de levantarse de la cama; (3) al no prever que debido al estado de debilidad en que había quedado el demandante podía ocurrir un accidente como el expuesto en la demanda.

Los demandados radicaron una solicitud de sentencia sumaria fundada en "que no hay controversia real en el presente caso en cuanto al hecho material de que el demandante antes del comienzo de esta acción relevó y exoneró por escrito a los demandados de toda responsabilidad proveniente de la donación de sangre descrita en la demanda de autos, así como de cualquier consecuencia que directa o indirectamente resultare de la referida donación." A dicha solicitud acompañaron el documento de descargo o de exoneración firmado por el demandante, y el cual lee en lo pertinente así: "Voluntariamente dono mi sangre al Banco de Sangre Metropolitano, para ser usada de la manera que así lo determine esta institución. También relevo y exonero al Banco de Sangre Metropolitano o a sus sucesores, de toda demanda o exigencia de cualquier índole que yo o mis herederos, albaceas o administradores legales puedan tener o tengan en su contra o a sus sucesores

como resultado de haber donado mi sangre, a lo cual me he sometido o voy a someterme, y a cualquiera consecuencia que de allí directa o indirectamente resultare."

Después de oír a las partes sobre la referida solicitud, la corte a quo dictó sentencia sumaria declarando sin lugar la demanda. Apeló el demandante y en este recurso sostiene que el documento de descargo es contrario al orden público y por tanto, nulo y sin valor alguno.

■■ La sentencia apelada es errónea y debe ser revocada aunque por razones distintas a las aducidas por el apelante. La acción ejercitada en este caso está predicada en las disposiciones del art. 1802 del Código Civil (ed. 1930) preceptivo de que el que por acción u omisión cause daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. El art. 4 del mismo Código dispone que los derechos concedidos por las leyes son renunciables a no ser esta renuncia contra la ley, el interés o el orden público o en perjuicio de tercero.

Guardan estrecha relación con este precepto de carácter general los arts. 1069 y 1207. El primero de ellos declara que las condiciones imposibles, las contrarias a las buenas costumbres y las prohibidas por la ley, anularán la obligación que de ellas dependa, y el segundo, que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. En esta forma el Código consagra la libertad de contratación, atendiendo, en primer término, a la voluntad de los contratantes, la que deberá prevalecer siempre que no sea contraria a la propia ley, a las buenas costumbres, a la moral, ni al orden público. El tribunal a quo resolvió que el documento de descargo (*release*) firmado por el demandante-apelante, no infringe la prohibición impuesta por ley a la libre contratación y concluyó que "no existen aquí aquellas razones de política pública que justifiquen la invalidez de exoneración o relevos por antici-

pado". (¹)    Como consecuencia consideró que el documento era suficiente para exonerar de responsabilidad a los demandados por sus actos negligentes. Podemos conceder, argüendo, que el documento de descargo en este caso, que en realidad es un convenio para no demandar, no es contrario al orden público, cuestión esta que estimamos innecesario resolver ahora, si por otro lado, llegamos a la conclusión de que dicho documento no tiene el alcance y efecto que le dió la corte a quo, una vez se estudie a la luz de los principios aplicables en la interpretación de documentos de esta naturaleza.

La renuncia de derechos autorizada por el art. 4 del Código Civil debe ser clara, terminante e inequívoca.  1 Scaevola, *Código Civil* (6a. ed.), pág. 255; 1 Manresa, *Comentarios al Código Civil* (6a. ed.), pág. 124; Sentencia del Tribunal Supremo de España de 17 de noviembre de 1931 y de 13 de junio de 1942.  Esto debe ser así con mayor razón cuando se trate de convenios en los cuales se exonere de responsabilidad a una persona por sus futuros actos negligentes. Indudablemente estos convenios estimulan la falta de cuidado, pues el mayor incentivo para el ejercicio del debido cuidado descansa en que se tenga conciencia de que una falla en este respecto hará incurrir en la responsabilidad de reparar totalmente el daño causado. (²)

■■■■  En el derecho americano, donde rigen principios similares a los nuestros en materia de contratación, se han adoptado determinadas reglas para la interpretación de documentos de descargo (*release*), que bien podemos hacerlas

---

(¹) El tribunal a quo llegó a esta conclusión después de señalar dos ejemplos de exoneración inválida, a saber; renuncia de un obrero a favor de su patrono de recibir compensación por daños resultantes del empleo, y exoneración a favor de una empresa de servicio público.

Para sostener que el "relevo" en este caso no violaba ningún principio de orden público, el tribunal sentenciador citó el caso de *Boll* v. *Sharp & Dohme, Inc.*, 107 N.Y.S. 2d 174.  Sin embargo este caso había sido revocado poco tiempo antes por la Corte Suprema, División de Apelaciones de Nueva York, aunque no a base de la validez o invalidez del convenio envuelto en el mismo.

Véase *Boll* v. *Sharp & Dohme, Inc.*, 121 N.Y.S. 2d. 20.

(²) Véase 12 Am. Jur., pág. 683.

nuestras sin menoscabo alguno para nuestro derecho estatutario. Como regla generalmente aceptada se establece la de que estos convenios sobre exoneración de responsabilidad futura por actos de negligencia no son favorecidos por la ley; *Fairfox Gas & Supply Co.* v. *Hadary*, 151 F.2d 939; *Chicago & N.W. Ry. Co.* v. *Chicago Packaged Fuel Co.*, 195 F.2d 467; *Johnston* v. *Fargo*, 77 N.E. 388; 6 Williston *on Contracts*, 4966; y deben, por tanto, ser interpretados estrictamente en contra de la parte que descansa en ellos para librarse de responsabilidad, y si posible, su interpretación debe ser contraria a la exoneración. 6 Williston, ob. cit., pág. 4966; 17 C.J.S., sec. 262, pág. 644. Para que una parte quede exonerada de las consecuencias de su propia negligencia, el lenguaje usado en el documento de descargo debe indicarlo así, en forma clara y explícita. *Doughnut Mach. Corporation* v. *Bibbey*, 65 F.2d 634; *Gross* v. *General Inv. Co.*, 259 N.W. 557; *Otis Elevator Co.* v. *Maryland Casualty Co.*, 33 P.2d 974; *Cf. Leydecker* v. *Brintnall*, 33 N.E. 399. Algunas cortes sostienen, a nuestro juicio con buen sentido, que el lenguaje exculpando de responsabilidad por negligencia debe ser explícito, bien haciéndose referencia expresa a la negligencia o bien indicando tal intención en términos inequívocos. Véase casos citados en *Chicago & N.W. Ry. Co.* v. *Chicago Packaged Fuel Co.*, supra, a las págs. 469 y 470.

La parte esencial del convenio suscrito por el apelante lee: "Voluntariamente dono mi sangre al Banco de Sangre Metropolitano, para ser usada de la manera que así lo determine esta institución. También relevo y exonero al Banco de Sangre Metropolitano . . . de toda demanda o exigencia de cualquier índole que yo . . . pueda [n] tener en su contra *como resultado de haber donado mi sangre,* a lo cual me he sometido o voy a someterme, y a cualquier consecuencia que de allí directa o indirectamente resultare." (Bastardillas nuestras.)

A nuestro juicio la reclamación o demanda que el apelante renuncia en este convenio es la que pueda surgir a su favor

*como resultado de haber donado su sangre.* Estos resultados no pueden ser otros que aquellos que generalmente provienen o pueden provenir de la pérdida de sangre, como por ejemplo, el malestar producido por la debilidad. No podemos sin embargo considerar como un resultado de la extracción de sangre una septicemia o envenenamiento de la sangre causada por el uso de instrumentos no esterilizados. Ese es más bien el resultado de la negligencia en la aplicación de la técnica para la extracción de sangre. La renuncia hecha por el apelante se contrae a lo primero y no a lo segundo. No creemos tampoco que la causa de acción aquí ejercitada haya sido renunciada en virtud de la última cláusula del convenio de descargo pues la frase "y a cualquier consecuencia que de allí directa o indirectamente resultare" nada añade a la renuncia pues dicha frase, que es de carácter general, se aplica a aquello que ha sido descrito con mayor peculiaridad en el documento.

En el caso de *Boll* v. *Sharp & Dohme*, supra, estaba envuelto un documento que leía en lo pertinente así:

"Certifico que no he consultado ni he sido asistido por un doctor durante las seis semanas anteriores a esta fecha y que estoy sometiéndome por mi cuenta y riesgo a las pruebas, exámenes y procedimientos usuales en relación con las donaciones de sangre. Convengo en que ni el Sharp & Dohme Donor Center, New York, ni ninguno de los cirujanos, médicos, técnicos, enfermera, agentes o funcionarios (*officers*) relacionados con Sharp & Dohme, Inc., o que en alguna forma participen en este trabajo, serán en modo alguno responsables de las consecuencias que me sobrevengan resultantes de la donación de dicha sangre."

Se resolvió que este documento no exoneraba a Sharp & Dohme de la responsabilidad en que pudiera incurrir a consecuencia de su negligencia en la aplicación de la técnica para extraer la sangre. Puede arguirse que en aquel caso el documento decía que el donante se sometía a "los procedimientos usuales en relación con las donaciones de sangre" mientras que el documento aquí envuelto no dice eso. Sin embargo, los apelados no podrían negar que venían obligados a

seguir los procedimientos usuales pues del propio documento firmado por el apelante se desprende que antes de proceder a extraer la sangre al apelante hicieron a éste los exámenes previos de rigor. Ello es bastante significativo y refuerza la contención de que el Banco venía obligado a seguir los procedimientos usuales en estos casos.

*En vista de lo expuesto, la solicitud sobre sentencia sumaria ha debido ser declarada sin lugar y en su consecuencia, se revoca la sentencia apelada y se devuelve el caso para ulteriores procedimientos no incompatibles con esta opinión.*