Brau Ramírez, Juez Ponente
*1134 TEXTO COMPLETO DE LA RESOLUCION
I
El presente recurso forma parte de numerosos casos relacionados con la práctica del Estado de preparar "carpetas" a distintos ciudadanos. Habiendo sido declarada inconstitucional dicha práctica por el Tribunal Supremo de Puerto Rico, Noriega v. Gobernador, 130 D.P.R. 919 (1992); Noriega v. Gobernador, 122 D.P.R. 650 (1988), quedaron pendientes numerosas reclamaciones en daños y pequicios presentadas por ios afectados, cf., Medina Morales v. Cruz Manzano, _ D.P.R. _ (1996), 96 J.T.S. 126, las cuales fueron consolidadas. Vives Vázquez v. Estado Libre Asociado, _ D.P.R. _ (1996), 96 J.T.S. 164.
El presente recurso concierne una de dichas reclamaciones presentada por el recurrido, Ramón Evaristo Toledo Maldonado, y varios de sus familiares en contra del Estado Libre Asociado, quien recurre ante este Tribunal a través del Procurador General. El E.L.A. recurre de una resolución emitida el 17 de noviembre de 1998 por el Tribunal de Primera Instancia, Sala Superior de San Juan.
Mediante el dictamen en cuestión, el Tribunal denegó una moción de desestimación presentada por el E.L.A., en la que dicha parte alegaba que el recurrido había renunciado a su causa de acción con relación al caso de las carpetas, por razón de una transacción previamente otorgada en otro asunto.
Denegamos la expedición del recurso.
II
Según se desprende del recurso presentado, el 9 de septiembre de 1983 el recurrido presentó una demanda por daños y perjuicios ante el Tribunal Superior de Caguas contra el E.L.A., el entonces Superintendente de la Policía y otros agentes del Orden Público, Caso Civil Núm. EDP-83-1430. Dicha reclamación iba dirigida a solicitar "resarcimiento por los daños y perjuicios, sufrimientos físicos y morales y las angustias mentales que produjeron en el demandante la fabricación de acusaciones y su arresto ilegal por los demandados", así como otras actuaciones que "privaron ál demandante de sus derechos constitucionales a la libertad, al derecho de propiedad, privacidad y han lesionado su dignidad humana."
En particular, se alegaba en la demanda que el 16 de abril de 1978 el recurrido había sido ilegalmente arrestado por miembros de la Policía en una carretera entre Caguas y Aguas Buenas y acusado de violaciones a la Ley de Armas y la Ley de Explosivos. Las acusaciones fueron archivadas por ausencia de causa probable. Posteriormente, el recurrido alegadamente se había enterado de que las acusaciones en su contra habían sido fabricadas por órdenes del Superintendente de la Policía debido a que él era independentista.
El recurrido alegaba que dichas actuaciones le habían ocasionado daños, "apareciendo su foto en la prensa y apareciendo ante la opinión pública como un terrorista". Solicitaba compensación por la violación a sus derechos civiles, así como por los daños ocasionados.
El Estado contestó la demanda negando las alegaciones.
Luego de varios años de trámite, incluyendo un recurso ante el Tribunal Supremo de Puerto Rico, Toledo Maldonado v. Cartagena Ortiz, _ D.P.R. _ (1992), 92 J.T.S. 173, y una sentencia favorable al recurrido, el 10 de abril de 1996 las partes arribaron a una Estipulación Sobre Transacción para poner fin al referido litigio. Entre otras cláusulas, dicha Estipulación disponía:
"El demandante transige toda causa de acción, hayase o no alegado específicamente en la demanda, así como toda responsabilidad u obligación de todos los demandados y/o del Estado Libre Asociado de Puerto Rico y/o cualquiera de sus agencias, instrumentalidades, funcionarios o *1135 _ empleados, hayan o no hayan sido incluidos como parte en este caso, que resulten directa o indirectamente de los hechos que dieron lugar a la presentación de la presente causa de acción por y en consideración del pago de la suma de $95,000.00 libre de intereses, costas del pleito u honorarios de abogado.
Queda expresamente acordado que al recibo del pago de la transacción por la suma antes mencionada el demandante radicará un aviso de desistimiento voluntario con perjuicio de su reclamación; entendiéndose además que dicha transacción incluye toda posible causa de acción, fuere o no alegada en este caso, que pueda surgir directa o indirectamente de los hechos que dieron lugar a la demanda y/o reclamación del demandante en el pleito del epígrafe y en consecuencia releva a todos los demandados y/o al Estado Libre Asociado de Puerto Rico así como cualquiera de sus agencias, instrumentalidades, funcionarios o empleados de responsabilidad en cuanto a toda posible causa de acción, fuere o no alegada en este caso, que pueda surgir directa o indirectamente de los hechos que dieron lugar a la demanda y/o reclamación del demandante en el pleito de epígrafe."
El Tribunal de Primera Instancia aprobó la referida transacción emitiendo sentencia a base de la misma el 28 de mayo de 1996.
Posteriormente, el 20 de junio de 1997, la parte recurrida instó la presente causa de acción por daños y perjuicios contra el E.L.A., la Policía de Puerto Rico, el Departamento de Justicia y la compañía aseguradora de éstos. Esta demanda fue enmendada posteriormente.
En la demanda, según enmendada, se alegó que a la parte recurrida "se le habían abjierto] y mant [enido] actualizadas mediante persecución e ilegal vigilancia policíaca varias carpetas o expedientes por la Policía de Puerto Rico, durante un período que se prolongó cerca de veinte (20) años, ello únicamente por razones políticas e ideológicas."
Se alegaba que los agentes del Departamento de la Policía y del Departamento de Justicia se habían dedicado de forma continua a vigilar toda la actividad personal, familiar y política de la parte recurrida, en detrimento de sus derechos de intimidad y libre asociación. Se aseveraba que: ”[l]a actuación del Estado no se limitó a la observación y vigilancia de actividades políticas e ideológicas de los demandantes, sino al hostigamiento personal, seguimiento entre vecinos y lugares de trabajo, difamaron mediante el libelo y la calumnia a los demandantes propagando falsedades culposa y negligentemente sobre la peligrosidad de los demandantes.''
La parte recurrida solicitó compensación por los daños ocasionados alegando causas de acción bajo la Constitución del E.L.A., las Leyes de Derecho Civiles de Puerto Rico y los Estados Unidos, L.P.R.A. secs. 13 y ss. y 42 U.S.C. secs. 1281 y ss., la Ley de Libelo, 32 L.P.R.A. secs. 3141 y ss., y las leyes laborales antidiscrimen, 29 L.P.R.A. see. 136.
Oportunamente, el E.L.A. presentó una moción de desestimación de la demanda, alegando que el recurrido venía impedido de reclamar, en vista de la Estipulación de Transacción otorgada por las partes en el caso EDP-83-1430.
La parte recurrida se opuso a dicha moción.
Luego de otros incidentes, el 17 de noviembre de 1998, el Tribunal de Primera Instancia emitió la resolución recurrida, denegando la moción de desestimación del E.L.A. En su resolución, la distinguida Sala recurrida expresó:

"Hemos examinado con cuidado el caso de Caguas, la demanda, la Sentencia del Tribunal de Instancia y la Moción de Transacción y nada surge que indique que se haya realizado una transacción respecto al carpeteo que alega el demandante en este caso por más de 20 años.

Aquel caso se limitó, a la litigación específicamente de la fabricación de un caso y al arresto ilegal del demandante por alegadas violaciones a la Ley de Armas y Explosivos cometidas en una fecha cierta.

*1136
Nada hay en la demanda original, ni en la Sentencia ni en la Estipulación, que surja o de base a pensar remotamente que el demandante transigió la totalidad de los hechos que puedan justificar un remedio a su favor y como consecuencia de la persecución que alega por 20 años por parte del Estado en este litigio.

Debe quedar, sin embargo, meridianamente claro que ninguna de las alegaciones del caso anterior, las alegaciones de daños allí contenidas y adjudicadas por sentencia y por la posterior transacción serán objeto de trámite en el caso presente."
Insatisfecho con este dictamen, el E.L.A. acudió ante nosotros.
ni
En su recurso, el E.L.A. plantea que erró el Tribunal de Primera Instancia al no desestimar la demanda de la parte recurrida a base del acuerdo anterior de transacción. El Tribunal Supremo de Puerto Rico ha establecido que una estipulación suscrita por las partes y aceptada por el Tribunal que pone fin a un pleito comenzado es un contrato de transacción, dentro del contexto del Art. 1709 del Código civil, 31 L.P.R.A. sec. 4821. Véase, Igaravidez López v. Ricci Asencio, _ D.P.R. _ (1998), 98 J.T.S. 143, a la pág. 250; Febus v. MARPE Construction Corp., _ D.P.R. _ (1994), 94 J.T.S. 19, a la pág. 11,547; Sucn. Román v. Shelga Corp., 111 D.P.R. 782, 786-787 (1981).
Como tal, el negocio de transacción viene obligado a cumplir con los requisitos de consentimiento, objeto y causa establecidos por el Art. 1231 del Código Civil, 31 L.P.R.A. sec. 3391. El consentimiento de los contratantes se manifiesta por el acuerdo consensual entre ellos para poner fin al litigio; el objeto es poner fin a la controversia y su causa consiste en las recíprocas concesiones de las partes, pues si bien tiene el propósito de hacer desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad, en que ello se logra mediante renuncias mutuas. Neca Mortgage Corporation v. A & W Developers S.E., _ D.P.R. _ (1995), 95 J.T.S. 10, ala pág. 604; Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503, 512-513 (1988).
Existen dos clases de transacción: la judicial y la extrajudicial. Si antes de comenzar el pleito las partes acuerdan eliminar la controversia mediante acuerdo, estamos frente a un contrato de transacción extrajudicial, así también si, luego de comenzado un litigio, las partes acuerdan una transacción sin la intervención del tribunal. En cambio, si la controversia ha generado un pleito y las partes, luego de éste haber comenzado, llegan a un acuerdo para eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, se trata de una transacción judicial. Neca Mortgage Corporation v. A & W Developers, S.E., 95 J.T.S. a la pág. 604.
Cualquiera que sea su forma, el contrato de transacción goza para las partes del efecto de cosa juzgada, según lo dispone el Art. 1715 del Código Civil, 31 L.P.R.A. see. 4287. Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos y no pueden volver sobre éstos. Igaravidez López v. Ricci Asencio, 98 J.T.S. a la pág. 251; Neca Mortgage Corporation v. A & W Developers S.E., 95 J.T.S. a la pág. 604.
Ahora bien, en cuanto al alcance de una transacción, el Art. 1714 del Código Civil dispone:

"La transacción no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma.

La renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre que ha recaído la transacción." 31 L.P.R.A. sec. 4826.
En la situación de autos, el E.L.A. reclama que al otorgar el acuerdo de transacción en el caso EDP-83-1430, la parte recurrida renunció a instar "toda causa de acción" que pudiera tener contra el E.L.A., estuviese o no alegada en la demanda presentada en dicho caso. Esto, según la parte recurrente, incluye la presente reclamación por la confección de carpetas, ya que al momento de la transacción el 10 de abril de 1996, se había declarado inconstitucional dicha práctica y los recurridos podían conocer que contaban con una causa de acción por este motivo.
*1137 Lo cierto es, sin embargo, que según el texto expreso de la estipulación, lo que se acordó transigir por los recurridos en dicha ocasión fueron las causas de acción "que resulten directa o indirectamente de los hechos que dieron lugar a la presentación de la presente causa de acción". Específicamente se expresó en el acuerdo que:
"dicha transacción incluye toda posible causa de acción, fuere o no alegada en este caso, que pueda surgir directa o indirectamente de los hechos que dieron lugar a la demanda y/o reclamación del demandante en el pleito del epígrafe...", (subrayado nuestro).
La renuncia de derechos no se presume. Los convenios de exoneración de responsabilidad no son favorecidos en nuestra jurisdicción. Los mismos se interpretan restrictivamente en contra de aquél que descansa en ellos para liberarse de responsabilidad. Citibank v. Dependable Ins. Co. Inc., 121 D.P.R. a la pág. 514; Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 74-75 (1987); Sucn. Román v. Shelga Corp., 111 D.P.R. a la pág. 788; Chico v. Editorial Ponce, Inc., 101 D.P.R. 759, 778 (1973); Cabrera v. Doval, 76 D.P.R. 777, 781 (1954).
En la situación de autos, la transacción de la reclamación por la confección de las carpetas no estaba expresamente contemplada en el lenguaje utilizado por las partes al otorgar la Estipulación. Véase, Cooperativa de Seguros Múltiples v. Lugo Torres, _ D.P.R. _ (1994), 94 J.T.S. 77, a la pág. 11,988; Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. a la pág. 514; Sucn. Román v. Shelga Corp., 111 D.P.R. a la pág. 788.
Toda vez que, conforme al citado Art. 1714 del Código Civil, la renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre que ha recaído la transacción, 31 L.P.R.A. sec. 4826, y que la reclamación en el caso de autos versa sobre hechos distintos a los del caso EDP-83-1430, actuó correctamente el Tribunal de Primera Instancia al denegar la moción de desestimación del E.L.A. Dicho foro aclaró que ninguna de las alegaciones del caso anterior podrían ser objeto de trámite en el caso presente, lo que disiparía cualquier duda sobre el asunto. 
Por los fundamentos expresados, se deniega el recurso presentado.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General