Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| *RST ERP PR, INC.*<br>**Apelado**<br><br>V.<br><br><br>*EMPIRE GAS COMPANY, INC.*<br>**Apelante** | KLAN202400843 | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil. Núm.<br>SJ2020CV01488<br><br>Sobre:<br>Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

Hernández Sánchez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2024.

El 11 de septiembre de 2024, Empire Gas Company, Inc. (Empire o apelante) compareció ante nos mediante una Apelación intitulada *Apelación contra la Desestimación de Reconvención* y solicitó la revisión de una *Sentencia Parcial* que se dictó el 25 de junio de 2024 y se notificó el 26 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Parcial* que presentó RST ERP PR, Inc. (RST o apelada). En consecuencia, desestimó con perjuicio los párrafos 9a, 9b, 9d, 9e, 9f, 11, 12 y 13 de la reconvención que presentó Empire. Además, aclaró que el monto de responsabilidad por el cual RST podría responder, si alguno, sería limitado a la cantidad pagada por Empire a RST por concepto de servicios que en el presente caso ascienden a un total de $426,638.32.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 18 de febrero de 2020, RST presentó una *Demanda* sobre cobro de dinero en contra de Empire.[1] En esta, alegó que Empire los contrató para que les desarrollaran una plataforma de manejo financiero integrada y para estos efectos se realizaron cuatro (4) contratos distintos. Expresó que a los referidos contratos se le asignaron distintos periodos para su cumplimiento y el precio de cada proyecto. Específicamente, en cuanto al pago de las facturas adujo que los contratos establecían que el pago se realizaría en 30 días o se le impondría un interés de 1% mensual. Afirmó que los servicios contratados se brindaron y que se presentaron las facturas mensualmente. Sin embargo, sostuvo que, a partir de la factura del mes de noviembre de 2017, Empire dejó de pagar las facturas por los servicios brindados y las facturas se acumularon hasta el mes de diciembre de 2019 cuando Empire decidió que daría por terminado el contrato. Así pues, indicó que, a pesar de haber realizado gestiones para el cobro de lo adeudado, estas fueron infructuosas por lo que Empire le debía la cantidad de $399,612.28. Además, reclamó intereses por la cantidad de $66,864.86. Por último, solicitó la imposición de honorarios de abogado por temeridad por la suma de $10,000.00.

En respuesta, el 31 de agosto de 2020, Empire presentó su alegación responsiva con sus respectivas defensas afirmativas.[2] En síntesis, confirmó que acordó con RST para que les proveyera unos servicios conforme a unos acuerdos, pero que este último no cumplió con los objetivos del trabajo lo cual provocó que Empire sufriera grandes pérdidas económicas. Ante ello, argumentó que no le adeudaba suma alguna a RST y que sí hubo pagos realizados posterior al año 2017.

---

[1] Véase, págs. 1-3 del apéndice del recurso.
[2] Íd., págs. 4-10.

Cabe precisar que, junto a su alegación responsiva el apelante también presentó una reconvención. En esta, sostuvo que necesitaba modernizar y hacer más eficientes sus procesos comerciales a través de una plataforma de manejo financiero integrada por lo que contrató a RST el cual le había representado que podría llevar a cabo esta tarea. Expresó que, confiando en que RST llevaría a cabo esta tarea en un plazo definido, adquirió los programas, equipos y servicios de la empresa Touchstar por un pago total de $440,765.00. Sin embargo, afirmó que no había podido utilizarlos debido al incumplimiento por parte de la apelada en el proceso de integración. Además, esbozó que le pagó a RST la suma de $426,638.32 por concepto de servicios y licencias del software el cual alegó que no pudo utilizar por la misma razón antes expuesta. Por estos motivos, reclamó las siguientes cantidades por concepto de gastos y perdidas:

A. Pago de profesionales adicionales para resolver las controversias causadas por los errores y/o incumplimiento del demandante- $89,272.98.

B. Mensualidades anuales de conexión tabletas compradas que no han podido ser utilizadas- $4,424.72.

C. Pagos al demandante de la suma de $426,638.32 por los servicios y programas licencias de software AX que no rindieron fruto al no poderse realizar la integración de los sistemas que era la razón de ser del proyecto.

D. Compra de los sistemas materiales y equipos de Touchstar, $440,765.20, que era parte esencial del proyecto y que el demandante no logró integrar.

E. Pérdidas estimadas en un solo año por el demandado al no obtener la economía no menos de 20 puestos de trabajo- $490,880.00.

F. Pérdidas en economía en horas reducidas estimadas para llevar a cabo el cierre del ciclo mensual de las operaciones- $339,840.00.

En vista de lo antes expuesto, solicitó que se declarara Ha Lugar la reconvención y que se le condenara a la apelada al pago de una suma total que estimó en una cantidad de $1,791,821.22.

Así las cosas, el 18 de septiembre de 2020, RST presentó una *Contestación a Reconvención.*[3] En síntesis, sostuvo que cumplió con las representaciones y obligaciones contenidas en los contratos y con las órdenes de trabajo pactadas entre las partes. Específicamente, indicó que, en el mes de marzo de 2019, las partes definieron un plan de trabajo con las horas restantes del proyecto para atender las discrepancias en la implementación del sistema, pero que la nueva gerencia de proyecto de Empire se negó a ejecutar dicho plan. Asimismo, añadió que la implementación de uno de los sistemas se efectuó con éxito, pero que Empire incumplió con las etapas de la integración que le correspondían contractualmente. Afirmó que estas acciones resultaron en atrasos al proyecto y un aumento de costos para RST. A tales efectos argumentó que cualquier razón por la cual Empire no pudo utilizar los sistemas era atribuible exclusivamente a ellos por abandonar el proyecto y el pago por los servicios prestados y pactados.

Luego de varios trámites procesales, el 8 de agosto de 2022, RST presentó una *Moción de Sentencia Sumaria Parcial.*[4] En esta, enumeró los hechos esenciales que, a su juicio, estaban en controversia y los que no. Luego, en vista de ello y del derecho aplicable, solicitó la desestimación de la reconvención toda vez que argumentó que los daños reclamados en esta eran contrarios a las limitaciones de responsabilidad contenidas en el acuerdo entre las partes. Sostuvo que los acuerdos alcanzados constituían la ley entre las partes. Particularmente, solicitó que se dictara sentencia sumaria parcial determinando que la responsabilidad de RST, si alguna, se limitaba a la cantidad que le pagó Empire por concepto de servicios según estipulaba el acuerdo de las partes.

---

[3] Íd., págs. 11-16.
[4] Íd., págs 45-57.

Para sostener su planteamiento, señaló que, el inciso 7 del contrato suscrito entre las partes contenía una cláusula que exponía lo siguiente:

> Costumer agrees that RST, its partners, principals, and employees shall not be liable for Costumer for any actions, damages, claims, liabilities, costs expenses, or losses in any way arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by Costumer to RST under this engagement.
>
> In no event shall RST, its partners, principals, or employees, or Costumer, its officers or employees, be liable for consequencial, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). In furtherance and not in limitation of the foregoing, RST will not be liable in respect of any decisions made by Costumer as a result of the performance by RST of its services hereunder.

En vista de ello, sostuvo que la cláusula antes expuesta expresaba de manera clara la intención de las partes a limitar la cantidad por la cual RST podía responder. Así pues, indicó que los pagos de Empire hacia ellos ascendían a un total de $426,638.32 por lo que esta cantidad representaba el límite al cual la parte apelante tenía derecho a reclamar. De igual forma, añadió que de una lectura de la cláusula era evidente que también se limitaban el tipo de reclamaciones que podía hacer Empire. De este modo, planteó que al Empire firmar el acuerdo entre las partes, los relevó de responsabilidad para responder a los siguientes daños: consecuentes, especiales, indirectos, incidentales, punitivos o daños ejemplares, costos, gastos o pérdidas, incluyendo, pero sin limitarse a pérdida de ganancias y costos de oportunidad. Por esta razón, insistió que las partidas reclamadas en la reconvención constituían gastos y pérdidas que no podían ser reclamadas según lo establecía la cláusula de limitación de daños.

Por su parte, el 8 de noviembre de 2022, Empire presentó una *Oposición a Moción de Sentencia Sumaria Parcial.*[5] En primer lugar, argumentó que la exoneración de responsabilidad era una defensa afirmativa que la apelada debió presentar en su contestación a la reconvención y no lo hizo por lo cual la renuncio y estaba impedida de traer dicho asunto en esta etapa. Por otro lado, puntualizó que el contrato objeto de esta controversia era uno de adhesión que debía interpretarse en contra de RST quien fue que lo redactó y a favor de Empire quien fue el que se limitó a firmar por estar en condiciones desiguales. Además, añadió que el incumplimiento por parte de RST de los servicios a los cuales se había comprometido brindar implicaba que la cláusula de limitación era inaplicable. Explicó que la cláusula limitaba la responsabilidad de RST a daños y reclamaciones que pudiesen surgir de los servicios brindados, pero que RST no los brindó por lo que no se podía activar la cláusula en cuestión. Por último, argumentó que la exoneración total reclamada en cuanto a los daños, gastos y costos directos, consecuentes, especiales, incidentales, punitivos o ejemplares era un intento de exoneración total incompatible con el precedente del caso *Cabrera v. Daval*, 76 DPR 777 (1954) y, por ende, debía ser descartada. Por estas razones concluyó que no procedía dictar sentencia sumaria parcial.

Evaluadas las posturas de ambas partes, el 25 de junio de 2024, el TPI emitió una *Sentencia Parcial* que se notificó el 26 de junio de 2024.[6] En primer lugar, formuló las siguientes determinaciones de hechos:

1. RST ERP es una corporación que provee servicios de desarrollo de programas de computación y de servicios de asistencia técnica en los sectores públicos y privados.

---

[5] Íd., págs. 93-106.
[6] Íd., págs. 110-123.

2. Empire Gas es una corporación doméstica dedicada a la venta y distribución de gas propano licuado.

3. RST ERP y Empire Gas suscribieron varios contratos por servicios prestados, relacionados al desarrollo e integración de una plataforma de manejo financiero. En específico, los siguientes:

    a. Dynamics AX 2012 R3 Implementation, contrato núm. 20170301-001 con fecha de comienzo de 15 de marzo de 2017 y fecha de expiración de 14 de marzo de 2017. Además, una orden de cambio para añadir un trabajo adicional por 24 horas (Dynamics AX 2012-Finance Implementation).

    b. Dynamics AX-TransPac LPG Interface, contrato núm. 20170710-001 con fecha de comienzo de 1 de agosto de 2017 y fecha de expiración de 31 de diciembre de 2017.

    c. Dynamics AX 2012 R3 Implementation and Touch Star Integration, contrato núm. 20180713-001 con fecha de comienzo de 15 de julio de 2018 y fecha de expiración de 31 de diciembre de 2018.

4. Empire Gas cursó a RST los siguientes pagos, para una suma total de $426,638.32:

    a. Cheque núm. 023376 emitido el 8/18/2017 por la cantidad de $19,409.58.

    b. Cheque núm. 023741 emitido el 11/20/2017 por la cantidad de $15,000.00.

    c. Cheque núm. 061973 emitido el 4/27/2018 por la cantidad de $59,500.00.

    d. Cheque núm. 063397 emitido el 10/29/2018 por la cantidad de $25,000.00.

    e. Cheque núm. 062951 emitido el 9/3/2018 por la cantidad de $60,000.00.

    f. Cheque núm. 112855 emitido el 4/27/2018 por la cantidad de $29,750.00.

    g. Cheque núm. 114712 emitido el 10/29/2018 por la cantidad de S12,500.00.

    h. Cheque núm. 114174 emitido el 08/31/2018 por la cantidad de 530,000.00.

    i. Cheque núm. 0024369 emitido el 4/30/2018 por la cantidad de $29,750.00.

    j. Cheque núm. 0025028 emitido el 10/29/2018 por la cantidad de $12,500.00.

    k. Cheque núm. 0024833 emitido el 09/03/2018 por la cantidad de $30,000.00.

    l. Cheque núm. 110683 emitido el 11/20/17 por la cantidad de $15,000.00.

    m. Cheque núm. 109400 emitido el 08/18/17 por la cantidad de $19,409.58.

    n. Cheque núm. 0508 emitido el 11/20/17 por la cantidad de $30,000.00.

    o. Cheque núm. 59326 emitido el 08/18/17 por la cantidad de $38,819.16.

5. Los contratos 20170301-001, 20170710-001 y 20180713-001 (en adelante los Contratos") contienen en su inciso 7 respectivamente, una cláusula de limitación de daños.

6. Los Contratos disponen que RST ERP facturará mensualmente de acuerdo a los servicios prestados y los gastos incurridos, según sea aplicable. Moción de Sentencia Sumaria, Anejos 1-3, Contratos, pág. 2, Sumac 80.

7. Los Contratos disponen que RST ERP facturará a base del tiempo trabajado a base de nas tarifas por hora y los materiales ("time and materials") por concepto de consultoría, más los honorarios por los productos, "hosting" en la nube o "cloud services". Moción de Sentencia Sumaria, Contratos, Anejo 1, págs. 5-6, Anejo 2, pág. 4, Anejo 3, pág. 5, Sumac 80.

8. La cláusula de limitación de daños que surge de los Contratos establece lo siguiente:

Limitation on Damages. Customer agrees that RST, its partners, principals, and employees shall not be liable for Customer for any actions, damages, claims, liabilities, costs expenses, or losses in any way arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by Customer to RST under this engagement. In no event shall RST, its partners, principals, or employees, or Customer, its officers or employees, be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and oportunity costs). In furtherance and not in limitation of the foregoing, RST will not be liable in respect of any decisions made by Customer as a result of the performance by RST of its services hereunder. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort (including, without limitation, negligence), or otherwise.

Luego tomando en consideración las determinaciones de hechos antes expuestas, el derecho aplicable y la prueba documental que obra del expediente, el TPI, en lo pertinente, resolvió lo siguiente:

La cláusula de limitación de daños establece que RST ERP no será responsable frente a Empire Gas "for any actions, damages, claims, liabilities, costs expenses, or losses in any way arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by Customer to RST [ERP] under this engagement". Por consiguiente, conforme a lo pactado expresamente por las partes, RST ERP no será responsable frente a Empire Gas por ninguna acción, daños, reclamación, responsabilidad, costos, gastos o pérdidas que surja de los servicios prestados, más allá de la cantidad total de los honorarios pagados por Empire Gas a RST ERP.

Además, la cláusula establece que "[i]n no event shall RST [ERP], I...] be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs)." Por ende, conforme a lo pactado expresamente por las partes, RST ERP no será responsable frente a Empire Gas por daños consecuentes, especiales, indirectos, incidentales, punitivos o ejemplares, incluyendo, pero no limitado a ganancias perdidas y costos de oportunidades.

Igualmente, las partes pactaron que RST ERP no será responsable frente a Empire Gas "in respect of any decisions made by Customer as a result of the performance by RST [ERP] of its services hereunder." Es decir, que RST ERP no será responsable por las decisiones tomadas por Empire Gas en la prestación de los servicios o como resultado de los servicios prestados por RST ERP.

Finalmente, provee la claúsula de limitación de responsabilidad que "[the provisions of this Paragraph "shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort (including, without limitation, negligence), or otherwise". Dispone que estas limitaciones se aplicarán independientemente de la forma que se haga la reclamación, mediante acción legal, una reclamación contractual, amparada en una ley, actuación delictual, por negligencia, o por cualquier otro fundamento.

La cláusula contractual de limitación de responsabilidad citada es precisa y refleja limitaciones de responsabilidad de RST ERP frente a posibles reclamos en este caso por parte de Empire Gas. La cláusula de limitación de daños como está en los contratos de servicios profesionales establece claramente el alcance de la responsabilidad y protegen

al proveedor de servicios de reclamaciones de acuerdo al tipo de causa, circunstancia o los límites de la misma. Precisamente, esta cláusula limita tanto las causales de posible reclamo, los daños que son compensables y contiene un límite de responsabilidad. Se destaca el límite de responsabilidad en la cláusula ya que RST ERP no será responsable por daños que excedan los honorarios de servicios pagados y que no serán responsables por decisiones tomadas por Empire Gas como resultado de los servicios prestados. En lo que respecta a pérdidas que pudiera incurrir Empire Gas, RST ERP no tiene una obligación o responsabilidad a la luz de los términos y condiciones de los Contratos. Por el contrario, las partes acordaron que Empire Gas asumiría las perdidas. Además, señala adecuadamente que estas limitaciones aplican a cualquier forma de reclamación legal en la protección del proveedor de servicios en una relación contractual entre partes comerciales contratantes sofisticadas. En fin, se destaca que este tipo de cláusula en los Contratos protegen al proveedor de servicios de responsabilidad y clarifican que el riesgo que asume el cliente, incluyendo el de sus decisiones, recae en el "Customer" o cliente, en este caso Empire Gas.

Con relación a la alegación de Empire Gas mediante la cual sostiene que la cláusula de limitación de daños fue renunciada por RST ERP al no ser levantada como defensa afirmativa; no estamos de acuerdo. Según surge de la Contestación a la Reconvención presentada por RST ERP, esta alegó afirmativamente que Empire Gas estaba impedida de entablar la Reconvención, invocaron como defensas afirmativas la doctrina de actos propios, que el contrato es la ley entre las partes, asunción de riesgo, y contrato incumplido, entre otros. Véase Contestación a Reconvención, párrs. 1 y 8, y Defensas Afirmativas, #2, #3, #15, #16 y #18.

Conforme expone el Art. 1233 de nuestro Código Civil de 2020, 31 LPRA sec. 9754, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor de estos. Las partes se obligaron mutuamente en los Contratos otorgados, tanto para realizar el pago como para la realización de servicios, siendo estos Contratos la ley entre las partes, incluyendo su cláusula de limitación de daños.

En cuanto a la alegación de Empire Gas sobre que no procede la limitación de daños cuando esta limitación surge de un contrato de adhesión, y que, como tal, estas cláusulas tienen que interpretarse en contra de quien las redacto; no procede ese argumento o defensa por no proceder de esa manera conforme a Derecho.

La cláusula de limitación de responsabilidad no tiene que interpretarse en contra de quien la redactó, sino que procede interpretar la misma de la forma más restrictiva. En este caso, interpretando la cláusula de limitación de daños de la forma más restrictiva, resulta

que la misma es clara, determinante, inequívoca y libre de toda ambigüedad. Se destaca, además, que Empire Gas firmó en diferentes fechas tres (3) Contratos mediante los cuales aceptó la cláusula de limitación de daños. Por ende, determinamos que, una vez perfeccionados los Contratos, Empire Gas y RST ERP se obligaron mutuamente, siendo los Contratos la ley entre las partes, no solo para el cumplimiento de lo expresamente pactado, sino a las consecuencias que se derivan de los mismos.

Destacamos, a su vez, que de la Declaración Jurada presentada por Empire Gas en su Oposición a Sentencia Sumaria Parcial, se desprende que no metió vicio alguno durante el proceso de contratación, o controversia alguna sobre lo pactado en la cláusula de limitación de daños, Por otro lado, surge que la contratación fue otorgada mediando liberalidad entre las partes, quedando así las partes obligadas para el cumplimiento de los pactos, cláusulas y condiciones.

Por lo tanto, ante este escenario, concluimos que procede acoger la Moción de Sentencia Sumaria presentada por RST ERP y dictar una Sentencia Parcial que, aunque no desestima la totalidad de la Reconvención presentada, sí limita la cantidad por la cual Empire Gas puede reclamar, que no puede ser más allá de la cantidad total de los honorarios pagados por Empire Gas a RST ERP de la suma de los pagos realizados por $426,638.32 habida cuenta que, conforme a los Contratos, RST ERP facturaría a base del tiempo trabajado a base de unas tarifas por hora y los materiales ("time and materials") por concepto de consultoría, más los honorarios por los productos, "hosting" en la nube o "cloud services", procedería determinar qué cantidad de las facturas correspondió a los honorarios a los que se refiere la cláusula 7 de los Contratos.

Conforme a lo pactado expresamente por las partes, RST ERP no será responsable frente a Empire Gas por daños consecuentes, especiales, indirectos, incidentales, incluyendo, pero no limitado a, ganancias perdidas y costos de oportunidades reclamadas en la Reconvención. Igualmente, RST ERP no será responsable frente a Empire Gas por las decisiones tomadas por Empire Gas en la prestación de los servicios o como resultado de los servicios prestados por RST ERP. Por consiguiente, se desestiman las reclamaciones por esos conceptos de la Reconvención, Párrafos 9a,9b,9d,9e,9f,11,12 y 13 y aplica el límite de responsabilidad por el cual RST ERP podría responder, si alguna, se encuentra limitada a la cantidad pagada por Empire Gas a RST ERP (Reconvención, Párrafos 8 y 9(c)).

En desacuerdo con este dictamen, el 10 de julio de 2024, Empire presentó una solicitud de reconsideración.[7] En síntesis expuso que la cláusula 13 del contrato suscrito entre las partes establecía que luego de la terminación o fecha de expiración del contrato, las únicas cláusulas que sobrevivieran serían las núm. 1, 2, 4, 5, 6, 9, 10, 11, 12 y 13. En vista de ello, resaltó que era un hecho incontrovertido que durante el mes de diciembre de 2019, se dio por terminado el acuerdo entre las partes y que la cláusula núm. 7 sobre la limitación de daños no aparecía como parte de las cláusulas antes mencionadas por lo que al momento de que se presentó la reconvención ya esta no estaba en vigor. El 12 de agosto de 2024, el TPI emitió y notificó una *Resolución* declarando No Ha Lugar la solicitud de reconsideración.[8]

Aún inconforme, el 11 de septiembre de 2024, Empire presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **Erró el Honorable Tribunal de Primera Instancia al declarar con lugar la Solicitud de Sentencia Sumaria de la Apelada y limitar la Reconvención a sólo lo pagado por Empire Gas Company, Inc.**

Atendido el recurso, el 16 de septiembre de 2024, emitimos una *Resolución* concediéndole a la parte apelada hasta el 4 de octubre de 2024 para presentar su alegato en oposición. Transcurrido el término antes expuesto, RST no presentó su respuesta al recurso de epígrafe. Sin embargo, el 9 de octubre de 2024, RST[9] presentó una *Moción de Desestimación de Apelación.* Posteriormente, a saber, que el 11 de octubre de 2024, presentó su *Alegato en Oposición.* Reconocemos que la parte apelada incumplió con nuestra orden de presentar su oposición al recurso el 4 de

---

[7] Íd., págs. 124-129.
[8] Íd., págs. 124-129.
[9] En la solicitud de desestimación compareció Pharos Solutions, Inc. en sustitución de RST ya que dicha compañía cambio su nombre. Sin embargo, para efectos de esta *Sentencia,* continuaremos utilizando el nombre RST para referirnos a la parte apelada.

octubre de 2024. Sin embargo, el 15 de octubre de 2024, emitimos una *Resolución* declarando No Ha Lugar la solicitud de desestimación presentada por RST y, además, dimos por perfeccionado el recurso. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

II.

-A-

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en

contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra*,* pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. (Énfasis suplido) Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea

inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental Inc.,* 148 DPR 420, 433 (1999).

-B-

Las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en la cual medie culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992.[10] Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado; *pacta sunt servanda.* Art. 1044 del Código Civil, 31 LPRA ant. sec. 2994. Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. Una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000). En tal sentido, **una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley.** (Énfasis suplido) Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375. Consecuentemente, **los tribunales no podemos relevar**

---

[10] Resaltamos que el cuerpo legal vigente en el momento que las partes contrataron era el Código Civil del 1930.

**a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno.** (Énfasis suplido) *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

Consonó con lo anterior, sabido es que, en el ámbito de las obligaciones y contratos, es una doctrina fundamental que **cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación.** (Énfasis suplido) Art. 1233 del Código Civil, 31 LPRA ant. sec. 3471. Los términos de un contrato se reputan claros "cuando por sí mismos son bastantes lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias, ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED,* 176 DPR 372, 387 (2009). Así pues, **en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes.** (Énfasis suplido) Íd., pág. 387.

III.

En su único señalamiento de error, el apelante argumentó que el TPI erró al declarar Ha Lugar la *Moción de Sentencia Sumaria Parcial* que presentó RST el 8 de agosto de 2022 y, en consecuencia, limitar el monto de responsabilidad por el cual RST podría responder a la cantidad pagada por Empire a RST por concepto de servicios.

Según el precitado derecho, al momento de revisar la concesión de una solicitud de sentencia sumaria, nos encontramos en la misma posición que el TPI. Así pues, en primer lugar, debemos evaluar si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, y con los dispuesto en *SLG Zapata-Rivera v. J.F. Montalvo, supra.* Al evaluar los escritos presentados por las partes resolvemos que, en esencia, ambas cumplieron con los referidos requisitos. Resuelto lo

anterior, nos corresponde evaluar si existen hechos materiales en controversia y de haberlos, exponer concretamente cuáles están en controversia y cuáles no.

Luego de evaluar los argumentos de cada parte y la prueba documental en apoyo a sus contenciones, el TPI realizó ocho (8) determinaciones de hechos incontrovertidos que resumiremos a continuación. Empire suscribió tres (3) contratos de servicio (20170301-001, 20170710-001 y 20180713-001) para que RST le desarrollara una plataforma de manejo financiero integrada. A los referidos contratos se le asignaron distintos periodos para su cumplimiento y el precio de cada proyecto. Particularmente, estos disponen que RST facturará mensualmente de acuerdo con los servicios prestados y los gastos incurridos, según sea aplicable. De este modo, Empire realizó quince (15) pagos entre los años 2017 al 2018 por concepto de los servicios brindados que ascienden a un total de $426,638.32.

Ahora bien, los tres (3) contratos antes mencionados, contienen una cláusula de limitación de daños que establece lo siguiente:

> Limitation on Damages. Customer agrees that RST, its partners, principals, and employees shall not be liable for Customer for any actions, damages, claims, liabilities, costs expenses, or losses in any way arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by Customer to RST under this engagement. In no event shall RST, its partners, principals, or employees, or Customer, its officers or employees, be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and oportunity costs). In furtherance and not in limitation of the foregoing, RST will not be liable in respect of any decisions made by Customer as a result of the performance by RST of its services hereunder. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort (including, without limitation, negligence), or otherwise.

Tras examinar los hechos materiales incontrovertidos que estableció el TPI, los adoptamos en su totalidad y, en consecuencia, concluimos que no existen hechos sustanciales en controversia que impidan dictar sentencia sumaria parcial. Dicho lo anterior, nos resta determinar si en efecto la cláusula de limitación de responsabilidad contenida en el inciso 7 de los contratos suscritos entre las partes limitan la cantidad por la cual RST podría responder a la pagada por Empire a RST por concepto de servicios que ascienden a una cantidad total de $426, 638.32.

En el caso de autos, el TPI dictó una *Sentencia Parcial* el 25 de junio de 2024 declarando Ha Lugar la *Sentencia Sumaria Parcial* que presentó RST. En consecuencia, resolvió que, el límite de la cantidad por la cual Empire podía reclamar no podía excederse del monto total de los honorarios ya pagados en concepto de los servicios brindados que sumaban a un total de $426,638.32. En vista de ello, desestimó con perjuicio los párrafos 9a, 9b, 9d, 9e, 9f, 11, 12, y 13 de la *Reconvención* que presentó Empire. En estos párrafos Empire reclamó los siguientes gastos:

9a. Pago de profesionales adicionales para resolver las controversias causadas por los errores y/o incumplimientos del demandante- $89,272.98.

9b. Mensualidades anuales de conexión de tabletas compradas que no han podido ser utilizadas- $4,424.72.

9d. Compra de los sistemas materiales y equipos de Touchstar, $440,765.20, que era parte esencial del proyecto y que el demandante no logró integrar.

9e. Pérdidas estimadas en un solo año por el demandado al no obtener la economía no menos de 20 puestos de trabajo- $490,880.00.

9f. Pérdidas en economía en horas reducidas estimadas para llevar a cabo el cierre del ciclo mensual de las operaciones $339,840.00.

11. El demandante incumplió sus obligaciones con el demandado y causó y sigue causando serios daños económicos continuos que aquí se reclaman.

12. Dado que estos daños son estimados al presente se hace reserva de aumentar los mismos una vez se concluyan las revisiones del impacto económico adverso que ha tenido no haber logrado la instalación de estos sistemas.

13. Este incumplimiento del demandante no dejó alternativa que el demandado perdiera todo lo invertido, perdiera las economías que debió producir estos sistemas, las que aquí se reclaman, sufriendo un atraso en sus operaciones al tener que seguir utilizando los mismos sistemas que originalmente utilizaba y que motivaron el contratar con el demandante, por lo que no hubo beneficio alguno para el demandado, solo pérdidas pasadas, presentes y futuras.

En respuesta a esta determinación, Empire, en síntesis, argumentó que la cláusula de limitación de responsabilidad no se incluyó como parte de las defensas afirmativas en la contestación a la reconvención por lo que RST había renunciado a esta. Además, alegó que la referida cláusula no procedía cuando esta surgía de un contrato de adhesión. Sostuvo que cuando se trataba de un contrato de adhesión, las cláusulas tenían que ser interpretadas en contra de quien las redacto. No le asiste la razón.

Según el derecho que antecede, las obligaciones derivadas de un contrato tienen fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado. Art. 1044 del Código Civil, *supra.* En vista de ello, una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley. Art. 1210 del Código Civil, *supra.* Por otra parte, es un principio fundamental que cuando los términos de un contrato son claros y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Art. 1233 del Código Civil, *supra.* Así pues, en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes. *S.L.G. Francis-Acevedo v. SIMED*, supra pág. 387.

En primer lugar, cabe precisar que la cláusula de limitación de responsabilidad antes citada dispone que RST no será responsable frente a Empire "for any actions, damages, claims, liabilities, costs expenses, or losses in any way arising out of or relating to the services performed hereunder for an aggregate amount in excess of the fees paid by Customer to RST under this engagement." Así pues, la cláusula es clara al establecer que RST **no** será responsable por ninguna acción, daños, reclamos, obligaciones, gastos o pérdidas que surjan de servicios brindados que excedan los honorarios pagados por Empire a RST. Como podemos observar, la primera parte de la cláusula limita la cantidad por concepto de daños que Empire le puede reclamar a RST.

Por otro lado, la cláusula establece que "[i]n no event shall RST [...] be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs)". Es evidente que esta parte de la cláusula limita los tipos de daños que Empire le puede reclamar a RST. Particularmente, la cláusula expone que RST no será responsable por daños consecuentes, especiales, indirectos, incidentales, punitivos o ejemplares, tampoco por gastos o pérdidas, incluyendo, pero no limitándose a pérdidas en ganancias o costos de oportunidad.

Por último, es importante señalar que la última oración de la cláusula dispone que "the provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss, whether in contract, statute, tort (including, without limitation, negligence), or otherwise." Por lo tanto, la cláusula termina puntualizando que las disposiciones contenidas en ella aplican independientemente de la causa de acción presentada.

En vista de lo antes expresado, no cabe duda de que la cláusula de limitación de responsabilidad contenida en los contratos limita el tipo de daño que Empire puede reclamar independientemente de la causa de acción presentada y limita la cantidad por la cual RST podría responder. Por lo tanto, dicha cláusula es una clara, precisa y libre de ambigüedad por lo que constituye ley entre las partes y Empire está obligado a cumplir con lo pactado y con las consecuencias que se derivan de este. Dicho esto, y en vista de lo antes expresado, el TPI no erró al desestimar los párrafos 9a, 9b, 9d, 9e, 9f, 11, 12, y 13 de la *Reconvención* ya que indudablemente estos constituían reclamos por daños especiales, pérdidas y gastos que no son recobrables conforme a la cláusula de limitación de responsabilidad. A tales efectos, concurrimos con la determinación del TPI de que el monto de responsabilidad por el cual RST podría responder no puede exceder de la cantidad de $426,638.32.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones