Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII (DJ 2024-062B)[1]

| | | |
|---|---|---|
| JOVAN, INC.<br><br>Demandante Apelada<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE AGUADILLA<br><br>Demandada Apelante | KLAN202500096 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Núm. Caso TIP: AG2022CV00812<br><br>Sobre:<br>Incumplimiento de Contrato |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece el Municipio Autónomo de Aguadilla (Municipio o apelante) vía recurso de apelación y solicita que revoquemos la *Sentencia* del Tribunal de Primera Instancia, Sala Superior de Aguadilla, emitida el 16 de diciembre de 2024. En dicho dictamen, se ordenó al apelante a pagar a la apelada la cantidad total de cuatrocientos setenta y un mil ciento tres dólares con veinte centavos ($471,103.20). Por los fundamentos que expondremos, confirmamos en parte y revocamos en parte la *Sentencia* recurrida.

En síntesis, el caso de epígrafe trata de una demanda por incumplimiento contractual. Según el expediente, el 25 de enero de 2013, el Municipio y Jovan, Inc. (Jovan o apelada) suscribieron el Contrato de Construcción del Proyecto Archivo Histórico y Museo

---

[1] Debido a que la Hon. Camille Rivera Pérez cesó sus funciones como Jueza del Tribunal de Apelaciones efectivo el 6 de febrero de 2025, se redujo la configuración del Panel XII a tres jueces.

Aguadillano Núm. 2013-001154 (Contrato Original), que dividió el proyecto en dos fases: la de permisos y la de construcción. En lo pertinente a la presente controversia, y en cuanto a la fase de permisos, el Contrato Original dispuso que (1) Jovan será responsable por la obtención del permiso de construcción enmendado y el de uso para el proyecto; (2) la apelada solicitaría, gestionaría y obtendría los permisos que apliquen de una variedad de agencias gubernamentales; (3) de existir o de esperarse algún atraso en la obtención de los permisos, Jovan notificaría a la Junta de Subasta en o antes de los últimos siete (7) días calendarios del término de la fase de permisos; y (4) la apelada formalizaría las enmiendas que sean requeridas para extender el tiempo de vigencia del contrato hasta que haya obtenido el permiso de uso para el proyecto.

En cuanto a la fase de construcción, el Contrato Original dispuso que (1) Jovan sería responsable de someter para evaluación de coordinadores del proyecto y aprobación de la Junta de Subasta del Municipio toda orden de cambio o solicitud de extensión de tiempo por días de lluvia y, en efecto, el Municipio no sería responsable por trabajos adicionales realizados por la apelada que no estuvieran aprobados por la Junta en la manera antes indicada; (2) la aceptación de un cambio de orden por la apelada relevaría al Municipio de cualquier reclamación relacionada con ese cambio de orden; (3) en el caso de la ejecución de un trabajo adicional por la apelada, como un cambio de orden, la cantidad pagada incluiría el costo de labores, equipo, materiales y seguros, entre otros, y un quince (15%) por ciento para cubrir su *overhead* y *profit*; y (4) de ser necesario un cambio de orden, el total del mismo no excederá del treinta (30%) por ciento del

costo original del proyecto. Más adelante, el Contrato Original clarificó que el mismo constituye el pacto total y completo habido entre las partes.

Ahora bien, el Contrato Original sufrió sesenta y nueve (69) enmiendas entre el 2013 y el 2021. En resumidas cuentas, las Enmiendas A a la G concernían a la etapa de permisos y demuestran que Jovan solicitó más tiempo para adquirir los permisos necesarios para la construcción de la obra. Las Enmiendas H a la I, de su parte, modificaron la fecha del comienzo de la fase de construcción. A partir de la Enmienda J comienza una serie de órdenes de cambio a razón de añadir o modificar algún aspecto del diseño del museo, con algunas excepciones.

En lo pertinente para la presente controversia, el 1 de julio de 2016 Jovan le envió al Municipio una primera carta en la cual expresó "una vez más" su preocupación por los continuos atrasos en la aprobación de órdenes de cambio, sin los cuales no es posible trabajar a una total capacidad en el proyecto. Según dicha carta, Jovan estuvo solicitando una variedad de órdenes de cambio desde el 10 de marzo de 2016, que incluyeron: (1) Orden de Cambio Núm. 18; (2) cambio de estampado de calle; (3) cambio de trabajos eléctricos; (4) cambios adicionales de oficina; (5) cambio del piso de vinil; (6) instalación de *railings*; (7) cambio de rampa de acceso; y (8) cambios en la tubería de agua. Jovan también incluyó en su carta que las tardanzas han aumentado el *extended overhead* a la cantidad de ciento treinta y siete mil cuatrocientos ochenta dólares con noventa centavos ($137,480.90). La Enmienda V del 19 de agosto de 2016 aprobó la instalación de los *railings*, cuarenta y nueve (49) días después de la primera carta de

Jovan y ciento sesenta y dos (162) días después de la alegada primera solicitud de orden de cambio del 10 de marzo de 2016.

El 10 de agosto de 2016, Jovan envió una segunda carta al Municipio, nuevamente expresando su preocupación por la aprobación tardía de las órdenes de cambio y aludiendo a una carta que envió el 1 de agosto de 2016 sobre el mismo tema. Más adelante, el 12 de septiembre de 2016, Jovan le envió al Municipio una tercera carta, en la cual explicó la pendiente aprobación de (1) la Orden de Cambio Núm. 18; (2) el cambio de los trabajos eléctricos; (3) el cambio adicional de la oficina; y (4) los cambios en la tubería de agua. Dicha carta igualmente dispuso que, por la paralización de las aprobaciones requeridas, el *extended overhead* aumentó a doscientos veinticinco mil ciento veinte cuatro dólares con ochenta y un centavos ($225,124.81). Los cambios eléctricos fueron aprobados en la Enmienda W del 19 de septiembre de 2016, ochenta (80) días después de la primera carta de Jovan y ciento noventa y tres (193) días después de la alegada primera solicitud de orden de cambio del 10 de marzo de 2016.

Finalmente, el 29 de noviembre de 2016 Jovan envió una cuarta carta al Municipio, insistiendo en su preocupación por los atrasos en la aprobación del (1) Cambio de Orden Núm. 18; (2) cambio en la tubería de agua; y (3) cambio de la planta eléctrica. Más aun, Jovan explicó que el *extended overhead* aumentó a trescientos diecisiete mil novecientos veinticuatro dólares con treinta y cinco centavos ($317,924.35). Dichos cambios se aprobaron en la Enmienda Y de 23 de diciembre de 2016— ciento setenta y cinco (175) días después de la primera carta de Jovan y doscientos ochenta y ocho (288) días después de la alegada primera solicitud de orden de cambio de 10 de marzo de 2016—y en la

Enmienda AA del 31 de enero de 2017, en la cual se aprobó el cambio de planta eléctrica sesenta y tres (63) días después de la cuarta carta de Jovan. Todas las enmiendas relacionadas a lo solicitado en las cartas de Jovan conciernen las Órdenes de Cambio Núm. 18, 19, 20, 22, 25 y 26. Además, durante el transcurso de la construcción, el Municipio nunca se opuso a lo dispuesto en las cartas, particularmente lo que concierne el *extended overhead*.

Atinente a lo anterior, la Enmienda S del 21 de enero de 2016 dispuso que Jovan no tendría derecho a reclamar costo adicional alguno por ningún concepto con relación a la Orden de Cambio Núm. 15. Similarmente, la Enmienda T del 28 de enero de 2016 estableció que Jovan no podría reclamar costo adicional en cuanto a la Orden de Cambio Núm. 16, mientras que la Enmienda U dispuso de lo mismo en cuanto a una orden de cambio no enumerada sobre la instalación de un sistema contra incendios. La Enmienda V, de su parte, determinó lo mismo en cuanto a la Orden de Cambio Núm. 19, la cual fue una de las solicitudes de cambio de Jovan en su primera carta. No obstante, las Enmiendas W a la AC—las cuales incluyen las Órdenes de Cambio Núm. 18, 20, 22, 25 y 26—no indicaron que Jovan no tendría derecho a reclamar costo adicional. Es a partir de la Enmienda AD hasta la última, la Enmienda BR de 5 de agosto de 2021, que se incluyeron continuamente las cláusulas que indicaban que Jovan no tendría derecho a reclamar costo adicional alguno por ningún concepto con relación a las respectivas órdenes de cambio.

Por otro lado, la Enmienda AC responsabilizó a Jovan con cubrir los honorarios por los servicios de inspección y supervisión del proyecto debido a los atrasos atribuibles a ella. Dichos costos, según la

referida enmienda, se descontarían de las certificaciones de pagos parciales de Jovan. A esos efectos, se descontaron nueve mil quinientos cincuenta ($9,550.00) dólares de la Certificación Núm. 39 y catorce mil novecientos cincuenta ($14,950.00) dólares de la Certificación Núm. 40, por lo cual el total de descuento fue veinticuatro mil quinientos ($24,500.00) dólares. Esta cláusula continuó añadiéndose en las posteriores enmiendas hasta la Enmienda BK del 8 de diciembre de 2020.

Posterior a la terminación sustancial de la obra, Jovan presentó una demanda contra el Municipio y alegó que este le debía cuatrocientos doce mil ciento sesenta dólares con setenta y dos centavos ($412,160.72) en *extended overhead* por los setecientos dieciocho (718) días de atraso en el trabajo y por el cobro de quinientos setenta y cuatro dólares con cuatro centavos ($574.04) diarios por dicho atraso, sin hacer mención alguna de los gastos incurridos por la inspección y supervisión del proyecto. En su respuesta, el Municipio argumentó que ninguna parte del Contrato Original estipula una partida de *overhead expenses* a favor de Jovan, entre otras alegaciones no pertinentes a la presente controversia. Luego de varios trámites procesales, ambas partes presentaron su *Informe Sobre Conferencia Preliminar Entre Abogados* y dispusieron en ella la prueba y los testigos que presentarían en juicio. Específicamente, Jovan informó que iba a presentar a dos testigos, incluyendo un perito que testificaría sobre el cálculo del *extended overhead*, entre otros detalles, mientras que el Municipio tendría su propio perito para testificar sobre el mismo tema.

Luego de otros trámites procesales, el perito de Jovan, el Ing. José F. Lluch García (Ing. Lluch García), presentó un informe

preliminar en la cual calculó que el *extended overhead* total era cuatrocientos cuarenta y seis mil seiscientos tres dólares con doce centavos ($446,603.12), a base de setecientos setenta y ocho (778) días de atraso en el trabajo de construcción y del cobro de quinientos setenta y cuatro dólares con cuatro centavos ($574.04) diarios por dicho atraso. El valor utilizado en el referido cómputo, de su parte, fue provisto por el *Certified Public Accountant* (CPA) de Jovan. El Municipio nunca presentó algún informe que haya redactado el perito que la apelante anunció en el *Informe Sobre Conferencia Preliminar Entre Abogados*.

A consecuencia de lo anterior, y en atención a una solicitud de sentencia sumaria, el foro de primera instancia emitió una *Resolución* el 8 de agosto de 2024 en la cual clasificó como hecho incontrovertido el que las reclamaciones de *extended overhead* en las cartas de Jovan se limitan única y exclusivamente a los atrasos compensables causados por el Municipio desde el Contrato Original hasta la Enmienda AC. El Municipio no se opuso oportunamente a la clasificación de este hecho como incontrovertido.

Una vez tramitada la prueba, durante el interrogatorio de los testigos el Ing. Lluch García declaró que la inspección y supervisión de una construcción usualmente lo paga el dueño de la obra. Igualmente, el otro testigo de Jovan, el señor Luis R. Lasalle Nieves (señor Lasalle Nieves) declaró, como contratista de Jovan, que la apelada firmó las enmiendas que la responsabilizaban con pagar los honorarios de la referida inspección y supervisión porque tal cláusula fue impuesta por el Municipio, más que la apelada no quería entrar en controversia. De su parte, el Municipio nunca presentó al perito que anunció previamente como testigo a fin de defender su postura.

Evaluada toda la evidencia y los testimonios provistos, el 16 de diciembre de 2024, el foro primario emitió una *Sentencia* en la cual concluyó que (1) el Municipio incurrió en mora al amparo de los Artículos 1162, 1163, 1167 y 1169 del Código Civil de 2020, 31 LPRA secs. 9314, 9315, 9331 y 9333, por lo cual le adeuda a Jovan cuatrocientos cuarenta y seis mil seiscientos tres dólares con doce centavos ($446,603.12); y que (2) Jovan tiene derecho a que se le reembolsen los veinte cuatro mil quinientos ($24,500.00) dólares que se le cobraron por la inspección y supervisión. Ante la solicitud de reconsideración, determinaciones de hechos y conclusiones de derechos adicionales del Municipio, el foro primario resolvió sin lugar.

Insatisfecho, el apelante recurre ante este Tribunal y alega que el foro primario erró al (1) determinar que procede una compensación por *extended overhead* por la cantidad de cuatrocientos cuarenta y seis mil seiscientos tres dólares con doce centavos ($446,603.12), cuando la apelada no estableció un caso *prima facie* de *extended overhead* y no se consideró el Contrato Original, sus enmiendas y los incumplimientos que retrasaron la obra atribuible al contratista; (2) concluir que la apelada tiene derecho a que se le reembolse la cantidad de veinte cuatro mil quinientos ($24,500.00) dólares por concepto de inspección y supervisión, sin que haya presentado prueba sobre dicha cuantía y más aún cuando Jovan suscribió un contrato de obra y varias enmiendas posteriores, que fueron registradas en la Oficina del Contralor, y de las cuales expresamente surge que aceptó y consintió los descuentos en sus facturas debido a su incumplimiento; y (3) declarar sin lugar la *Moción de Reconsideración y Determinaciones de Hechos Adicionales*, al hacer determinaciones de hechos en la *Sentencia* que no fueron parte de la

prueba, excluyendo la prueba documental sometida que fue estipulada entre las partes la cual contradice esas determinaciones de hechos.

En oposición, la apelada argumenta que (1) el Municipio no presentó prueba testifical, pericial ni documental durante el juicio que sustentara sus alegaciones o que refutara la evidencia presentada por Jovan; (2) el foro apelativo le debe deferencia al foro primario en cuanto a la evaluación de los testigos y la apreciación de la prueba; (3) muchas veces el planteamiento sobre insuficiencia de la prueba es uno que se reduce a la credibilidad que se le da a los testigos y a la apreciación que hace el juzgador de instancia sobre dicha prueba; (4) el incumplimiento contractual del Municipio causó el atraso extremo de la construcción de la obra pública; (5) por tratarse de un contrato de adhesión, cualquier cláusula de renuncia al derecho de reclamar los costos no sería válido; (6) el costo del *extended overhead* es recobrable; (7) el Municipio impuso unilateralmente los costos de inspección y supervisión en contra de Jovan, este último nunca habiendo aceptado asumir dichos gastos; (8) el Municipio nunca impugnó en juicio su obligación de reembolsar los referidos costos; y (9) el Municipio pretende inducir a error al foro apelativo al argumentar que la prueba documental estipulada debe ser considerada automáticamente como prueba incontrovertible de los hechos que alega.

Vale recordar que en nuestro ordenamiento jurídico se presume que los tribunales primarios actúan con corrección, por lo que compete a la parte apelante la obligación de demostrar lo contrario. *Morán v. Martí*, 165 DPR 356 (2005) (*Per Curiam*). Dicho de otro modo, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de

credibilidad que hacen los foros primarios. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021). Ello responde a que la deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical ya que tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo. *Barreto Nieves et al. v. East Coast,* 213 DPR 852 (2024); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Ortiz Ortiz v. Medtronic,* 209 DPR 759 (2022); *Gómez Márquez et al. v. El Oriental,* 203 DPR 783 (2020); *Pueblo v. Toro Martínez*, 200 DPR 834 (2018). A esos efectos, "la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, 'no exista base suficiente que apoye su determinación'". *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022) (citando a *Gómez Márquez et al. v. El Oriental*, 203 DPR 783 (2020)). Por tanto, los foros revisores no deben intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad. Íd. (citando a *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194 (2021)).

Ahora bien, el contrato existe desde que una o varias personas se obligan respecto de otra u otras, a dar alguna cosa, o prestar algún servicio, siempre y cuando concurran el consentimiento, objeto y causa. Arts. 1206 del Código Civil de 1930, 31 LPRA ant. sec. 3371.[2] Asimismo, las partes pueden acordar cualquier pacto, cláusula o condición que no sea contraria a la ley, a la moral o al orden público y, en efecto, los contratos tienen fuerza de ley entre las partes. Íd., ant.

---

[2] Por el Contrato Original y la gran mayoría de las enmiendas haberse suscritos antes del Código Civil de 2020 entrar en vigor, estaremos utilizando el Código Civil de 1930 para fundamentar nuestros argumentos.

secs. 2994, 3372. Además, si los términos del contrato son claros y no dejan duda sobre la intención de las partes, se interpretará el lenguaje en su sentido literal y, de las palabras parecer contrarias a la intención evidente de las partes, prevalecerá ésta sobre aquéllas. Íd., ant. sec. 3471. De una persona particular y el gobierno suscribir un contrato, dicho contrato será interpretado como si se tratara de un contrato entre dos personas particulares. *Campos v. Cia. Fom. Ind.*, 153 DPR 137 (2001) (citando a *De Jesús González v. AC*, 148 DPR 255 (1999)).

Por cierto, los contratos de adhesión son aquellos en las cuales una sola parte dicta las condiciones del contrato y la otra ha de aceptar. *SLG Francis-Acevedo v. SIMED*, 176 DPR 372 (2009) (citando a *Zequeira v. CRUV*, 83 DPR 878 (1961)). Éstos están redactados de una manera uniforme, generalizada y sin preocupación por la elección del cliente, más que la intervención de una de las partes consiste en su mera formalidad, involuntaria y sin haber sido resultado de una negociación equitativa. M.A. Torres, *El contrato de adhesión en la era de la reforma laboral: Un análisis del impacto de la contratación laboral luego de la Ley 4-2017*, 11 UPR Bus. L. J. 1 (2020) (citando a R. Ortega-Vélez, *Diccionario Jurídico: Derecho puertorriqueño*, 2.ª ed., San Juan, Ed. Chrisley, 2008, pág. 156; 2 J. Puig Brutau, *Compendio de Derecho Civil*, 3.ª ed., Barcelona, Ed. Bosch, 1997, pág. 292). Ante estos tipos de contratos, el foro primario deberá evitar interpretarlos de modo irrazonable. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169 (2011) (citando a *RC Leasing Corp. v. Williams Int. Ltd.*, 103 DPR 163 (1974)). A esos efectos, será nulo la cláusula de relevo cuando una parte se encontró obligada a aceptar el relevo. *Chico v. Editorial Ponce, Inc.*, 101 DPR 759 (1973) (citando a *Donna v. Con Edison*, 337 N.Y.S.2d

772 (1972); *Kansas City Power & Light Co. v. United Tel. Co. of Kan.*, 458 F.2d 177 (1972); *Delta Airlines, Inc. v. Douglas Aircraft Company*, 238 Cal.Rptr. 518 (1966); *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69 (1960)); *Cabrera v. Doval*, 76 DPR 777 (1954).

A raíz de ello, todo contratista, ante un contrato de obra o de construcción, estará obligado a realizar una obra por el pago de un precio cierto. Art. 1434 del Código Civil de 1930, 31 LPRA ant. sec. 4013. Véase, también, *Constructora Bauzá, Inc. v. García López*, 129 DPR 579 (1991). A esos efectos, nuestro ordenamiento dispone que el comitente de un contrato de obra estará obligado a (1) pagar el precio de la obra en la forma, cuantía y tiempo convenido; y (2) recibir la obra pactada. *Alco Corp. v. Mun. de Toa Alta*, 183 DPR 530 (2011) (citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 468; F. Puig Peña, *Tratado de Derecho Civil español*, Madrid, Ed. Rev. Der. Privado, 1951, T. IV, Vol. II, pág. 302); *Master Concrete Corp. v. Fraya, SE*, 152 DPR 616 (2000) (citando a M. Albaladejo, *Derecho Civil*, 8.ª ed., Barcelona, Ed. Bosch, 1989, pág. 49). Por otro lado, el contratista estará obligado a ejecutar la obra según convenido, a las reglas del arte de la construcción y a los usos o reglas profesionales. *Master Concrete Corp. v. Fraya, SE*, *supra* (citando a Albaladejo, *Derecho Civil*, *op. cit.*, págs. 77-78).

De otro modo surge que en las obligaciones recíprocas, ninguno de los obligados incurrirá en mora si el otro no cumple o no se llama a cumplir lo que le incumbe y, en efecto, desde que uno de los obligados cumple, empieza la mora del otro. Art. 1053 del Código Civil de 1930, 31 LPRA ant. sec. 3017. Más aun, nuestra jurisprudencia ha identificado la mora como el retraso culpable y, a esos efectos, la culpa

o negligencia del deudor de una obligación consiste en la omisión de aquella diligencia que exige la naturaleza de la obligación y corresponda a las circunstancias de las personas, tiempo y lugar. Íd., ant. sec. 3021. *Rodríguez Sanabria v. Soler Vargas*, 135 DPR 779 (1994) (citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, 4.ª ed., Barcelona, Ed. Bosch, 1988, T. I, Vol. II, págs. 412-413; J. Castán Tobeñas, *Derecho Civil español común y foral*, 10.ª ed., Madrid, Ed. Reus, 1967, T. III, pág. 140). Todo por lo cual la responsabilidad que proceda de negligencia es exigible en el cumplimiento de toda clase de obligaciones, pero podrá moderarse por los tribunales según cada caso. Art. 1056 del Código Civil de 1930, 31 LPRA ant. sec. 3020. Similarmente, el *extended overhead* compensa los daños que incurrió el contratista por los gastos no absorbidos que se devenguen durante un retraso causado por el comitente. *In re Redondo Const. Corp.*, 678 F.3d 115 (1.er Cir. 2012).

Conforme con lo anterior, "las obligaciones y los desembolsos de fondos públicos municipales sólo podrán hacerse para obligar o pagar servicios, suministros de materiales y equipo, reclamaciones o cualesquiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto y por los reglamentos adoptados en virtud de las mismas". Art. 8.004 de la Ley Núm. 81-1991 (21 LPRA sec. 4354). Además, todo contrato de construcción, obras y mejoras públicas que involucren a un municipio de Puerto Rico debe estipular (1) la cuantía máxima del costo de la obra; (2) la forma de pago; y (3) la manera en que se llevará a cabo el monitoreo o la inspección de la obra. Sec. 6, Cap. IX del Reglamento para la Administración Municipal de 2016, Reglamento Núm. 8873 de 19 de diciembre de 2016.

Igualmente, se debe incluir cláusulas resolutorias en casos de incumplimiento y penales o de daños líquidos por cumplimiento tardío, más cumplir con la adquisición de los permisos requeridos por las agencias concernientes. Íd., págs. 142-143. Claro, aunque los municipios, por lo general, no pueden pactar el pago futuro de cantidades en exceso de la asignación presupuestada para un contrato, existe excepción en cuanto a los contratos de arrendamiento de propiedad mueble o inmueble, o en los de servicios. *Johnson & Johnson Int'l Inc. v. Mun. San Juan*, 172 DPR 840 (2007). Como nota aclaratoria, los contratos de obra se distinguen de los contratos de servicios, ya que los de obra prometen un resultado con independencia del trabajo necesario para realizarlo. *Constructora Bauzá, Inc. v. García López*, *supra* (1991) (citando a M. Albaladejo, *Curso de Derecho Civil español común y foral,* Barcelona, Ed. Bosch, 1997, T. II, págs. 450-451).

Por último, los derechos y las obligaciones debidamente adjudicados en el ámbito judicial mediante dictamen firme constituirán la ley del caso luego de transcurrido el término provisto para recurrir de los mismos. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1 (2016) (citando a *Félix v. Las Haciendas*, 165 DPR 832 (2005); *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599 (2000); *Sánchez Rodríguez v. López Jiménez*, 118 DPR 701 (1987)). Por tanto, los planteamientos que han sido objeto de adjudicación por el foro primario no pueden reexaminarse. Íd.

En el presente caso, el Tribunal de Primera Instancia actuó correctamente al imponer el pago de cuatrocientos cuarenta y seis mil seiscientos tres dólares con doce centavos ($446,603.12) por *extended*

*overhead*. Del expediente se desprende que el Municipio se demoró por tiempo considerable en la aprobación de las órdenes de cambio de las cuales Jovan hacia referencias en sus cartas al punto de atrasar la conclusión de los trabajos de construcción.

Aunque varias de las enmiendas previas a la Enmienda AD del Contrato Original aluden a ciertos atrasos de la apelada, lo cierto es que durante los trámites interlocutorios del proceso judicial el Tribunal de Primera Instancia emitió una *Resolución* en la cual clasificó como un hecho incontrovertido que las reclamaciones de *extended overhead* en las cartas de Jovan no se limitaron a atrasos del Municipio desde el Contrato Original hasta la Enmienda AC; hecho al cual el Municipio nunca se opuso antes de que dicha determinación adviniera final y firme. Igualmente, el lenguaje del Contrato Original sobre relevo de responsabilidad del Municipio por órdenes de cambio se refiere a si Jovan aceptaba dichos cambios, por lo cual quedó implicado que era el Municipio quien estaría solicitando tales órdenes de cambio. Más aun, aunque nuestro ordenamiento no permite a los municipios pactar el pago futuro de cantidades en exceso de la asignación presupuestada en contratos de obra, la controversia ante nosotros no trata del pago por la finalización de la construcción que se pactó en el Contrato Original, sino de una reclamación por gastos incurridos fuera de los dispuestos por dicho contrato y a consecuencia de la administración del mismo.

Por tanto, ante el hecho incontrovertido de que los atrasos en la construcción del museo fueron atribuidos al Municipio, la ausencia de evidencia que descartara el derecho de Jovan a reclamar gastos adicionales por mora junto a la prueba de que las órdenes de cambio en controversia fueron solicitadas por Jovan y asumidas por el Municipio,

confirmamos la imposición del *extended overhead* a favor de la apelada y nos remitimos al criterio y determinación del foro primario en cuanto a la cantidad de cuatrocientos cuarenta y seis mil seiscientos tres dólares con doce centavos ($446,603.12).

Por el contrario, en cuanto a los gastos incurridos por Jovan en la inspección y supervisión del proyecto de construcción, resolvemos que el Tribunal de Primera Instancia erró al ordenar al Municipio pagar veinticuatro mil quinientos ($24,500.00) dólares por los gastos incurridos por la apelada. Aunque de ordinario el dueño de una obra de construcción es quien asume los honorarios de inspección y supervisión, en este caso existe un Contrato Original recíproco y unas enmiendas que Jovan firmó voluntariamente en las que asumió la responsabilidad de dichos pagos. No advertimos que los fundamentos de Jovan sobre haber firmado las enmiendas para evitar alguna controversia o litigación sean suficientes para invalidar la responsabilidad a la cual se sujetó. Por tanto, revocamos la imposición del pago de veinticuatro mil quinientos ($24,500.00) dólares contra el Municipio, la cual Jovan nunca solicitó en la demanda.

Por los fundamentos que expresamos, confirmamos en parte y revocamos en parte la *Sentencia* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez concurre sin escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones