Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| COUNCIL OF OWNERS OF CONDOMINIO PARQUE 228<br><br>Demandante Apelante<br><br>v.<br><br>ONE ALLIANCE INSURANCE CORPORATION<br><br>Demandada Apelada | TA2025AP00167<br><br>Consolidado<br><br>TA2025CE00397 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2019CV05518<br><br>Sobre: Seguros Incumplimiento Aseguradoras Huracanes Irma/María |
| COUNCIL OF OWNERS OF CONDOMINIO PARQUE 228<br><br>Demandante Peticionaria<br><br>v.<br><br>ONE ALLIANCE INSURANCE CORPORATION<br><br>Demandada Recurrida | | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2019CV05518<br><br>Sobre: Seguros Incumplimiento Aseguradoras Huracanes Irma/María |

Panel especial integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

Candelaria Rosa, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de febrero de 2026.

Comparece el Consejo de Titulares del Condominio Parque 228 mediante recurso de apelación y solicita que revoquemos la *Sentencia* del Tribunal de Primera Instancia, Sala Superior de Bayamón, emitida el 31 de mayo de 2025. Igualmente, el Consejo recurre vía *certiorari* y solicita que revoquemos dos (2) *Órdenes* del mismo Tribunal, emitidas el 4 de agosto de 2025 y el 6 de agosto de 2025. Por los fundamentos

que expresaremos, confirmamos la *Sentencia* apelada y denegamos expedir el auto de *certiorari*.

En síntesis, el Consejo pagó una prima de veinte un mil cuatrocientos sesenta ($21,460.00) dólares a One Alliance Insurance Corporation para adquirir una póliza de seguro para la propiedad Condominio Parque 228. En lo pertinente, la póliza contenía un endoso de deducible por tormenta de viento que provee cobertura por daños a la propiedad causados por vientos, sujeto al dos (2%) por ciento del valor de la propiedad asegurada. La póliza también limita la cubierta a los daños en el interior de una propiedad causados por lluvia, salvo que el edificio o estructura sufra primero de un daño cubierto ocasionado en su techos o paredes por donde dicha lluvia entró.

Por otro lado, la póliza dispone que, en casos de daños o pérdidas, el asegurado deberá permitir que la aseguradora inspeccione, cuantas veces sea necesario, la propiedad y cualquier documentación necesaria. Asimismo, dicho contrato obliga al asegurado a presentar su comprobante de pérdida (*proof of loss*) dentro de los sesenta (60) días después de la notificación, para que la aseguradora pueda investigar cualquier reclamo de daños o pérdidas y notificar su determinación treinta (30) días posteriores al recibimiento del comprobante de pérdida.

Pasado el Huracán María el 20 de septiembre de 2017 y luego del Consejo de Titulares presentar su reclamación por daños ante su aseguradora, One Alliance contrató a Adjusters, Inc. para que este manejara la referida reclamación. A su vez, Adjusters subcontrató a ECZ Group para que inspeccionara la propiedad y este último igualmente subcontrató al señor Pedro Nieves, un abogado y

agrimensor, quien efectuó su inspección el 6 y 11 de noviembre de 2017.

Mientras tanto, el 26 de octubre de 2017, Adjusters, en representación de One Alliance, solicitó al Consejo de Titulares que entregara varios documentos, que incluyeron (1) una lista de todos los daños que se está reclamando causados por viento con su respectiva cuantía; (2) fotografías de dichos daños; y (3) una copia del estimado de reparación. Posteriormente, el Primer Informe de ECZ Group, del 7 de diciembre de 2017, concluyó que los edificios inspeccionados sufrieron daños severos por los vientos del huracán, por lo cual recomendaron una compensación total de cuarenta mil ciento ochenta y tres dólares con cuarenta y dos centavos ($40,183.42). Posteriormente, en el Primer Reporte de Adjusters de 23 de julio de 2018, se informó del costo de daños y de la compensación total neta calculada por ECZ Group a la vez que le advirtió que el Consejo no proveyó los documentos requeridos para respaldar su reclamación. Ante estas circunstancias, el Consejo de Titulares contrató los servicios de los ajustadores públicos Total Claims International, LLC, para que evaluara los daños del Condominio y sometiera sus hallazgos a One Alliance.

Por todo lo acontecido, el 15 de enero de 2019, One Alliance le envió al Consejo de Titulares una oferta de adelanto de cuarenta mil ciento ochenta y tres dólares con cuarenta y dos centavos ($40,183.42). Sin aceptar esta oferta, el 18 de septiembre de 2019, el Consejo de Titulares presentó demanda contra One Alliance y reclamó nueve millones seiscientos cuarenta mil quinientos cincuenta y cinco dólares con sesenta centavos ($9,640,555.60) por daños a la propiedad y,

novecientos sesenta y cuatro mil cincuenta y cinco ($964,055.00) dólares por los daños creados por el alegado incumplimiento contractual. Luego de varios trámites procesales, la aseguradora solicitó que se le permitiera volver a inspeccionar el Condominio, pero el propio Consejo demostró tener reparos, mientras que el Tribunal apelado limitó la inspección a las áreas comunes.

A razón de lo anterior, en el Segundo Informe de ECZ Group del 7 de mayo de 2021, éstos señalaron que cuando fueron a hacer sus inspecciones en noviembre de 2017 no tuvieron acceso a las áreas comunes del condominio, pero que, para el presente informe, se logró acceder a estas áreas. No obstante, este Segundo Informe explica que no recibieron información o identificación de casi todas las áreas comunes que fueron reclamadas como dañadas, por lo cual recomendaron una compensación de cinco mil seiscientos cuarenta y tres ($5,643.00) dólares por daños a las áreas comunes.

Mientras tanto, el Consejo solicitó, de manera separada, que se ordenara sentencia sumaria y sentencia parcial por las alegaciones con el propósito de que la aseguradora le pagara cuarenta mil ciento ochenta y tres dólares con cuarenta y dos centavos ($40,183.42) por razón de que era una deuda líquida y exigible. Luego del Tribunal apelado resolver sin lugar a ambas mociones, el Consejo recurrió ante el Tribunal de Apelaciones mediante *certiorari*. En *Sentencia* emitida el 27 de mayo de 2021, en el caso KLCE202100510, se ordenó que One Alliance pagara cuarenta mil ciento ochenta y tres dólares con cuarenta y dos centavos ($40,183.42) como primer ajuste.

Posteriormente, One Alliance reconoció que, según un segundo ajuste, le debía al Consejo cuatrocientos cincuenta y un mil setecientos

cuarenta y cuatro dólares con cincuenta y nueve centavos ($451,744.59). Ante esto, el Consejo solicitó el pago de cuatrocientos once mil quinientos sesenta y un dólares con diecisiete centavos ($411,561.17) como el remanente del segundo ajuste. Luego de que el Tribunal resolviera la petición mediante *Orden* de 4 de febrero de 2023, la apelada recurrió ante el Tribunal de Apelaciones en el caso KLCE202300225, que denegó expedir el auto de *certiorari*.

Tiempo después, One Alliance solicitó la desestimación de la demanda al amparo de la Regla 39.2 de Procedimiento Civil de 2009 (32 LPRA Ap. V), bajo la alegación de que el Consejo falló en probar que el demandado incurrió en violaciones contractuales o legales, y por haber omitido evidenciar la extensión de los daños reclamados, ya que el estimado de los peritos del Consejo contiene partidas especulativas en cuanto a las áreas que no fueron inspeccionadas, y partidas sobreestimadas que no responden a la realidad del mercado. El 8 de abril de 2024, el Tribunal recurrido se reservó el fallo a esta última solicitud hasta que culminara la presentación de prueba de la parte demandada y quedara sometido el caso en su totalidad.

Evaluada la prueba tramitada en sala, el Tribunal, entre otras cosas, no confirió credibilidad a los peritos del Consejo de Titulares, toda vez que uno de ellos, el Ing. Thomas Irmiter, carece de conocimiento suficiente sobre la industria de construcción de Puerto Rico y del estado de daños del entero Condominio, mientras que el Ing. Roberto López Esquerra admitió utilizar el método de extrapolación para hacer su estimado de daños. Luego del trámite de la prueba, en su *Sentencia*, el Tribunal recurrido concluyó que (1) se excluye de la póliza el desgaste, deterioro y daños ocasionados por falta de

mantenimiento; (2) la póliza dispone que el asegurado tiene el deber de brindarle a la aseguradora la oportunidad de inspeccionar los daños reclamados, así como examinar y fotocopiar sus libros y récords; (3) el asegurado debe cooperar con la investigación y transacción de la reclamación; (4) la prueba pericial de la parte demandante está fundamentada en un estimado de daños inflado; y (5) la parte demandante debía al menos especificar con cuáles cláusulas contractuales había incumplido la demandada, cosa que no hizo. Por tanto, el Tribunal recurrido resolvió ha lugar la solicitud de desestimación pendiente de One Alliance.

Posteriormente, One Alliance presentó un *Memorando de Costas*. Ante ello, el Consejo de Titulares se opuso porque a su juicio el tracto procesal del caso evidenciaba que el Consejo fue la parte prevaleciente. El Tribunal recurrido resolvió que no podía dar por victoriosa a One Allince, ya que fue necesaria la presentación del pleito para obtener que el Consejo obtuviera una cantidad mayor a la ofrecida extrajudicialmente, como pago de la reclamación de seguros. No obstante, dicho Tribunal consideró que sí procedían las costas con posterioridad a la *Orden* del 4 de febrero de 2023, que ordenó a la One Alliance al pago de cuatrocientos once mil quinientos sesenta y uno dólares con diecisiete centavos ($411,561.17). Asimismo, el Tribunal de Primera Instancia determinó de que procedían los honorarios por comparecencia de juicio del Ing. Colón Zavala. A esos efectos, el Consejo presentó un *Memorando de Costas* debido a que fue la parte victoriosa en el caso con énfasis en los gastos incurridos durante los trámites anteriores al 4 de febrero de 2023, al cual el Tribunal recurrido resolvió sin lugar.

Insatisfecho, el Consejo de Titulares recurre ante este Tribunal mediante el recurso TA2025AP00167 y alega que el Tribunal de Primera Instancia erró al desestimar y archivar con perjuicio la demanda. Por otro lado, y vía el recurso TA2025CE00397, el Consejo de Titulares argumenta que el Tribunal recurrido erró al (1) concluir que proceden las costas a favor de One Alliance cuando, posterior a la *Sentencia*, consideró al Consejo como la parte victoriosa; y (2) no conceder el *Memorando de Costas* del Consejo. Presentadas las oposiciones de One Alliance, resolvemos.

Al comenzar la discusión de derecho en torno al recurso TA2025AP00167, cabe destacar que unos de los fundamentos para solicitar la desestimación de una demanda es que esta no expone una reclamación que justifique la concesión de un remedio. Regla 10.2(5) de Procedimiento Civil, *supra*. Ante este planteamiento, la desestimación solo procede cuando se demuestra que la parte demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pueda probar. *Rivera Candela et al. v. Universal Insurance Company*, 214 DPR 1007 (2024) (citando a *Cobra Acquisitions v. Mun. de Yabucoa et al.*, 210 DPR 384 (2022)). Por ello, se debe considerar los hechos bien alegados de la manera más favorable al demandante, y al resolver toda duda a favor de éste, si la demanda es suficiente para constituir una reclamación válida. Íd. (citando a *Cobra Acquisitions v. Mun. de Yabucoa et al.*, *supra*; *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022)). No obstante, la solicitud de desestimación se dirige únicamente a los méritos de la controversia y no a los aspectos procesales del caso. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70

(2023) (citando a *Montañez et al. v. Hosp. Metropolitano*, 157 DPR 96 (2002)).

A esos efectos, vale recordar que en nuestro ordenamiento jurídico se presume que los tribunales primarios actúan con corrección, por lo que compete a la parte apelante la obligación de demostrar lo contrario. *Morán v. Martí*, 165 DPR 356 (2005) (*Per Curiam*). Dicho de otro modo, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los foros primarios. *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021). A esos efectos, "la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, 'no exista base suficiente que apoye su determinación'". *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022) (citando a *Gómez Márquez et al. v. El Oriental*, 203 DPR 783 (2020)). Por tanto, los foros revisores no deben intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad. Íd. (citando a *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194 (2021)).

Ahora bien, el contrato existe desde que una o varias personas se obligan respecto de otra u otras, a dar alguna cosa, o prestar algún servicio, siempre y cuando concurran el consentimiento, objeto y causa. Arts. 1206 del Código Civil de 1930, 31 LPRA ant. sec. 3371.[1] Asimismo, las partes pueden acordar cualquier pacto, cláusula o condición que no sea contraria a la ley, a la moral o al orden público y,

---

[1] Por el contrato de seguros haberse suscrito antes del Código Civil de 2020 entrar en vigor, estaremos utilizando el Código Civil de 1930 para fundamentar nuestros argumentos.

en efecto, los contratos tienen fuerza de ley entre las partes. Íd., ant. secs. 2994, 3372. Además, si los términos del contrato son claros y no dejan duda sobre la intención de las partes, se interpretará el lenguaje en su sentido literal y, de las palabras parecer contrarias a la intención evidente de las partes, prevalecerá ésta sobre aquéllas. Íd., ant. sec. 3471. A esos efectos, toda obligación recíproca podrá resolverse cuando una parte incumple y, consecuentemente, el perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Íd., ant. sec. 3052.

Por cierto, los contratos de adhesión son aquellos en las cuales una sola parte dicta las condiciones del contrato y la otra ha de aceptar. *SLG Francis-Acevedo v. SIMED*, 176 DPR 372 (2009) (citando a *Zequeira v. CRUV*, 83 DPR 878 (1961)). Éstos están redactados de una manera uniforme, generalizada y sin preocupación por la elección del cliente, más que la intervención de una de las partes consiste en su mera formalidad, involuntaria y sin haber sido resultado de una negociación equitativa. M.A. Torres, *El contrato de adhesión en la era de la reforma laboral: Un análisis del impacto de la contratación laboral luego de la Ley 4-2017*, 11 UPR Bus. L. J. 1 (2020) (citando a R. Ortega-Vélez, *Diccionario Jurídico: Derecho puertorriqueño*, 2.ª ed., San Juan, Ed. Chrisley, 2008, pág. 156; 2 J. Puig Brutau, *Compendio de Derecho Civil*, 3.ª ed., Barcelona, Ed. Bosch, 1997, pág. 292). Ante estos tipos de contratos, el foro primario deberá evitar interpretarlos de modo irrazonable. *Coop. Sabaneña v. Casiano Rivera*, 184 DPR 169 (2011) (citando a *RC Leasing Corp. v. Williams Int. Ltd.*, 103 DPR 163 (1974)). A esos efectos, será nulo la cláusula de relevo cuando una parte

se encontró obligada a aceptar el relevo. *Chico v. Editorial Ponce, Inc.*, 101 DPR 759 (1973) (citando a *Donna v. Con Edison*, 337 N.Y.S.2d 772 (1972); *Kansas City Power & Light Co. v. United Tel. Co. of Kan.*, 458 F.2d 177 (1972); *Delta Airlines, Inc. v. Douglas Aircraft Company*, 238 Cal.Rptr. 518 (1966); *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69 (1960)); *Cabrera v. Doval*, 76 DPR 777 (1954).

Dicho esto, un contrato de seguro es uno de adhesión, por lo cual las cláusulas dudosas o ambiguas deberán interpretarse liberalmente en beneficio del asegurado y, en efecto, las cláusulas de exclusiones son desfavorecidas y deberán interpretarse restrictivamente en contra del asegurador. *Rivera Matos v. ELA*, 204 DPR 1010 (2020) (citando a *Viruet et al. v. SLG Casiano-Reyes*, 194 DPR 271 (2015); *Natal Cruz v. Santiago Negrón et al.*, 188 DPR 564 (2013); *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880 (2012); *Jiménez López et al. v. SIMED*, 180 DPR 1 (2010); *SLG Francis-Acevedo v. SIMED*, *supra*; *Monteagudo Pérez v. ELA*, 172 DPR 12 (2007)). A su vez, le corresponde al asegurado el peso de la prueba para establecer su reclamación, mientras que la aseguradora deberá evidenciar que aplica alguna exclusión. Íd.

Por otro lado, todo asegurado tiene el derecho a que su reclamación se resuelva en un periodo razonable dentro de los primeros noventa (90) días de haberse recibido dicha reclamación, salvo que exista una justa causa para extenderlo. Arts. 1.120 y 27.162 de la Ley Núm. 77 de 19 de junio de 1957, 26 LPRA secs. 118, 2716b; *Balcones de San Juan v. MAPFRE*, 208 DPR 761 (2022). Asimismo, todo asegurador deberá disponer de las razones por las cuales ciertas partidas de la reclamación fueron declinadas. Art. 1.120 de la Ley Núm. 77 de

19 de junio de 1957, *supra*. Estas reclamaciones deberán resolverse mediante (1) el pago total de la misma; (2) la denegación escrita y debidamente fundamentada de la reclamación; o (3) el cierre de la reclamación por inactividad del reclamante, cuando éste no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación. Íd., sec. 2716c. De la aseguradora incumplir con sus obligaciones en resolver una reclamación, el reclamante podrá incoar una acción civil en contra de ésta. Íd., secs. 2716a, 2716d.

Sabido esto, el dolo contractual consiste en la omisión consciente, intencionada y voluntaria de incumplir con la obligación acordada con conocimiento de que se realiza un acto injusto. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659 (1997) (*Per Curiam*) (citando a *Canales v. Pan American*, 122 DPR 329 (1982); *Márquez v. Torres Campos*, 111 DPR 854 (1982)). De una persona incurrir en dolo, ésta quedará sujeta a indemnizar por los daños y perjuicios que conocidamente se deriven de su falta de cumplimiento. Íd.; Art. 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018. No obstante, el dolo no se presume; el reclamante de esta causa de acción deberá probar, mediante prueba directa o circunstancial, o inferencia, que dicha conducta dolosa ocurrió. *Colón v. Promo Motor Imports, Inc.*, *supra* (citando *a Canales v. Pan American*, *supra*; *Márquez v. Torres Campos*, *supra*; *Miranda Soto v. Mena Eró*, 109 DPR 473 (1980)).

Además, los intereses por mora son la indemnización independiente de daños y perjuicios, impuesta como penalidad por la demora en el pago, por lo cual no constituyen parte integrante e inherentemente inseparable de la obligación principal. *Consejo de Titulares del Condominio Playa Azul II v. MPAFRE PRAICO*, 2024

TSPR 140, 215 DPR ___ (2024) (citando a *Rivera v. Crescioni*, 77 DPR 47 (1954)). En particular, de la parte deudora incurrir en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal. Art. 1061 del Código Civil de 1930, 31 LPRA ant. sec. 3025.

En otro orden de cosas, el Tribunal adjudicador tiene amplia discreción con relación a la admisión o exclusión de la prueba pericial, por lo cual sus determinaciones en cuanto a esto deben ser sostenidas excepto cuando sean claramente erróneas. *SLG v. Mini-Warehouse*, 179 DPR 322 (2010) (citando a *Salem v. United States Lines Co.*, 370 US 31 (1962)). Del Tribunal determinar que un testigo está cualificado como perito o las partes estipulan su cualificación, dicho perito podrá testificar basado en su conocimiento científico, técnico o especializado, aunque su valor probatorio dependerá de (1) si el testimonio está basado en hechos o información suficiente; (2) si el testimonio es el producto de principios y métodos confiables; (3) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso; (4) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica; (5) las calificaciones o credenciales de la persona testigo; y (6) la parcialidad de la persona testigo. Regla 702 de Evidencia de 2009 (32 LPRA Ap. VI); *SLG v. Mini-Warehouse*, *supra*. Al amparo de nuestro ordenamiento, la imparcialidad de un testigo no será condición para un Tribunal poder calificar a dicha persona como perito. *SLG v. Mini-Warehouse*, *supra* (citando a *US v. Williams*, 81 F.3d 1434 (7mo Cir. 1996)).

De otro lado, la evidencia extrapolada es aquella inferencia que se hace basado en prueba circunstancial, unido a ciertos datos y observaciones. Véase H.A. VanDine III & E. Norton, *Reliability and Admissibility: The Foundation of Extrapolation Evidence*, 49 (Núm. 8) DRIFTD 68 (2007). En cuanto a controversias sobre una construcción, este método de extrapolación podrá utilizarse para que un perito opine sobre daños extensos en una estructura, basado en la presencia de daño en una sección aislada de la edificación. Íd. Así las cosas, el Tribunal Supremo federal ha dictaminado que un tribunal de distrito federal no está obligado en admitir evidencia extrapolada cuando exista una brecha analítica entre los datos presentados y la opinión del perito. *General Elec. Co. v. Joiner*, 522 US 136 (1997). Véase *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 US 579 (1993). Por esta condición, varios tribunales federales han permitido la extrapolación siempre y cuando el perito presente alguna base científica para validar su opinión. Véase VanDine III & Norton, *supra*.

A esos efectos, otros paneles de este Tribunal han rechazado la extrapolación como método de estudio de daños en edificios. *Consejo de Titulares del Condominio Monte Real v. MAPFRE,* KLAN202500197 (7 de noviembre de 2025); *Consejo de Titulares del Condominio Villas de Hato Tejas v. MAPFRE*, KLAN202300791 (3 de diciembre de 2024). Igualmente, estos casos apelativos incluyeron al señor Irmiter y el señor Esquerra como peritos, los cuales admitieron en cada controversia que la inspección visual o física es más confiable que la extrapolación. *Consejo de Titulares del Condominio Monte Real v. MAPFRE*, *supra*; Consejo *de Titulares del Condominio Villas de Hato Tejas v. MAPFRE*, *supra*.

Por otra parte, una sentencia, incluirá toda determinación del Tribunal de Primera Instancia que resuelva finalmente las cuestiones litigiosas, definan los derechos de las partes y de la cual pueda apelarse. Regla 42.1 de Procedimiento Civil, *supra*; *Peerless Oil v. Hermanos Pérez*, 186 DPR 239 (2012) (citando a *Cárdenas Maxán v. Rodríguez*, 119 DPR 642 (1987)). Mientras tanto, una resolución incorpora aquel dictamen que pone fin a un incidente dentro del proceso judicial, ya sea antes o después de emitirse una sentencia. Regla 42.1 de Procedimiento Civil, *supra*; *Peerless Oil v. Hermanos Pérez*, *supra* (citando a *Cortés Pagán v. González Colón*, 184 DPR 807 (2012)). Véase, también, *JMG Investment, Inc. v. ELA*, 203 DPR 708 (2019).

En cuanto al recurso TA2025CE00397, debemos enfatizar que el auto de *certiorari* es el vehículo procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos, tanto en el ámbito provisto por la Regla 52.1 de Procedimiento Civil, *supra*, como de conformidad con los criterios dispuestos por la Regla 40 de este Tribunal de Apelaciones, *supra*. Véase, también, *IG Builders v. BBVAPR*, 185 DPR 307 (2012). En tal sentido, la función de un tribunal apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro de primera instancia y predicar su intervención en si la misma constituyó un abuso de discreción; en ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia. *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Citibank v. ACBI*, 200 DPR 724 (2018).

Por su parte, las costas se concederán a la parte a cuyo favor se resuelva el pleito, excepto en aquellos casos en que se disponga lo

contrario por ley. Regla 44.1 de Procedimiento Civil, *supra*. Véase, también, Art. 27.165 de la Ley Núm. 77 de 19 de junio de 1957 (26 LPRA sec. 2716e). Esto es a razón de que la parte que reclama aquello a lo cual no tiene razón, obliga a otra a recurrir a los tribunales para hacer valer su valor y que litiga con el propósito de retrasar la justicia, es quien debe pagar por los gastos del pleito. *Garriga, Jr. v. Tribunal Superior*, 88 DPR 245 (1963). El Tribunal solamente podrá conceder las costas en cuanto a los gastos en que se incurrió necesariamente en la tramitación de un pleito o que dicho foro, en su discreción, estima que una parte litigante debe reembolsar a otra. Íd. Una vez reclamadas estas costas, la imposición de costas a favor de la parte victoriosa será mandatorio, aunque no de forma automática, ya que se tendrá que presentarse oportunamente un memorando de costas en el que se precisen los gastos incurridos. *Rosario Domínguez v. ELA*, 198 DPR 197 (2017) (citando a *Colón Santos v. Coop. Seg. Mult. PR*, 173 DPR 170 (2008); *JTP Dev. Corp. v. Majestic Realty Corp.*, 130 DPR 456 (1992)). El Tribunal tendrá amplia discreción para evaluar la razonabilidad y determinar la necesidad de los gastos detallados. Íd. (citando a *Maderas Tratadas v. Sun Alliance et al.*, *supra*; *Auto Servi, Inc. v. ELA*, 142 DPR 321 (1997)).

Por último, cuando cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entiende corresponden a tal conducta. *González Ramos et al. v. Pacheco Romero et al.*, 209 DPR 138 (2022) (citando la Regla 44.1(a) de Procedimiento Civil, *supra*). Dicha temeridad aplica cuando una parte (1) alargue innecesariamente

un pleito; o (2) interponga pleitos frívolos que obliguen a la parte contraria a incurrir en gastos innecesarios o gestiones evitables. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163 (2022) (citando a *Nieves Huertas et al. v. ELA I*, 189 DPR 611 (2013); *Domínguez v. GA Life*, 157 DPR 690 (2002)).

Asimismo, nuestro Tribunal Supremo ha dispuesto que existe temeridad cuando (1) una parte contesta una demanda y niega responsabilidad total, aunque se acepte posteriormente; (2) una parte se defiende injustificadamente de la acción; (3) una parte considera que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir su responsabilidad; (4) dicha parte se arriesga a litigar un caso del que se desprende *prima facie* su responsabilidad; y (5) esta misma niega un hecho que le conste como cierto a quien hace la alegación. *Fernández v. San Juan Cement Co.*, 118 DPR 713 (1987) (citando a *Rodríguez Cancel v. AEE*, 116 DPR 443 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721 (1984); *Abréu Román v. Rivera Santos*, 92 DPR 325 (1965); *Montañez Cruz v. Metro. Cons. Corp.*, 87 DPR 38 (1962); *Mercado v. American Railroad Co.*, 61 DPR 228 (1943); *Reyes v. Aponte*, 60 DPR 890 (1942)).

Por su naturaleza, la imposición de honorarios de abogados como sanción por temeridad pueden determinarse en cualquier tipo de acción judicial. *González Ramos et al. v. Pacheco Romero et al.*, *supra* (citando a *Elba ABM v. UPR*, 125 DPR 294 (1990)). No obstante, tal determinación descansa en la sana discreción del foro primario, por lo cual un foro apelativo no intervendrá a menos que se demuestre que la adjudicación monetaria es constitutiva de un claro abuso de discreción.

*Pérez Rodríguez v. López Rodríguez et al.*, *supra* (citando a *Rodríguez de Oller v. TOLIC*, 171 DPR 293 (2007)).

En el presente caso, y en lo atinente al recurso TA2025AP00167, el Tribunal de Primera Instancia actuó correctamente al desestimar la demanda del Consejo de Titulares. Del expediente se desprende que el Tribunal apelado tuvo ante sí una variedad significativa de documentación y testimonios de peritos para evaluar e interpretar, a su discreción, el valor probatorio de cada uno y cómo los hechos presentados se configuran en la controversia. Esto incluye la manera que dicho Tribunal contrastó y valoró a los diversos peritos y sus métodos de inspección del Condominio Parque 228, entre ellos el método de extrapolación que, como fue discutido, no ha sido de manera indiscutida aceptado en nuestra jurisdicción. Igualmente, el Tribunal apelado contempló las inspecciones incompletas hechas por las figuras subcontratadas por Adjusters y las acciones del Consejo de Titulares durante todo el procedimiento de la reclamación.

Asimismo, que el propio Tribunal recurrido haya limitado a One Alliance a re-inspeccionar las áreas comunes durante el pleito no contradice su interpretación de que se debió haber culminado con todas las inspecciones previo a presentarse el pleito. En especial, cuando el propio Consejo de Titulares tuvo reparos sobre la solicitud de One Alliance de re-inspeccionar la propiedad por la posibilidad de que atrasaría los procedimientos jurídicos. A esos efectos, y reconociendo que el peso de la prueba estaba en el Consejo de Titulares, no nos convence su argumento de que el Tribunal de Primera Instancia erró en su valoración e interpretación de la prueba.

De otra parte, tampoco nos persuade el argumento de que la aseguradora incumplió con su obligación contractual al tardar más de noventa (90) días para ofrecer su oferta de pago por los daños ocurridos. Además de la póliza disponer de términos distintos a los descritos en el Código de Seguros, nuestra jurisprudencia reconoce que una aseguradora podrá extender el término para atender la reclamación cuando exista justa causa para ello. A la luz de esto, debemos considerar que el Huracán María ocasionó un desastre en Puerto Rico. Tal nivel de daño no puede obviarse cuando Tribunal evalúa la dilación en responder a una reclamación, al igual que no puede ignorarse la propia omisión del asegurado en entregar la documentación requerida en su tiempo. Por tanto, no hubo incumplimiento contractual, dolo o mora por One Alliance.

De igual modo, el argumento del asegurado de que One Alliance actuó de manera temeraria no tiene mérito. El que la aseguradora haya pagado el primer ajuste de cuarenta mil ciento ochenta y tres dólares con cuarenta y dos centavos ($40,183.42) luego de haberse presentado la controversia ante el Tribunal de Apelaciones, no demuestra un acto temerario, toda vez que el Consejo rechazó la oferta original de One Alliance. Además, cualquier acción que tomó la aseguradora para mostrar causa por la cual el referido foro apelativo no debía expedir el auto de *certiorari* en el recurso KLCE202100510, no alargó innecesariamente el pleito, ya que dicha acción fue una mera parte del procedimiento apelativo.

Por otro lado, en lo relacionado con el recurso TA2025CE00397, debemos recalcar que el total de cuatrocientos noventa y uno mil novecientos veintiocho dólares con un centavo ($491,928.01) que el

Consejo de Titulares recibió durante el trámite judicial fue producto de la resolución de controversias interlocutorias. Es decir, en el momento en el cual se adjudicaron los pagos del primer y segundo ajuste, ninguna de las partes del pleito era la parte victoriosa, toda vez que el litigio— esto es, la controversia principal por la cual se presentó la demanda— estaba todavía en proceso de dilucidarse. Al emitir su *Sentencia*, el Tribunal de Primera Instancia puso fin al pleito mediante la desestimación de la demanda, lo cual convirtió a One Alliance como la parte victoriosa del procedimiento. Por tanto, no advertimos que el Tribunal de Primera Instancia haya errado o abusado de su discreción al denegar el *Memorando de Costas* del Consejo de Titulares.

Por los fundamentos expresados, confirmamos la *Sentencia* apelada y denegamos expedir el auto de *certiorari*.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones